STATE OF CONNECTICUT *v.* ANDRE GASTON
(11296)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued November 7, 1985—decision released January 28, 1986

*Louis I. Parley,* for the appellant (defendant).

*Susann E. Gill,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Richard Schatz* and *Carl Schuman,* assistant state's attorneys, and *David M. S. Shaiken,* legal intern, for the appellee (state).

DANNEHY, J. A jury found the defendant guilty of felony murder in violation of General Statutes § 53a-54c. His sole claim on appeal is that he was denied his constitutional right to a speedy trial. We find no error.

The following facts are relevant to the defendant's claim. On September 8, 1979, Ralph Blue was shot to death at the front door of his Hartford apartment. The defendant and two accomplices, Matthew McCoy and Thomas Browdy, were soon implicated in Blue's murder. The defendant was arrested and charged with felony murder on September 11, 1979, and on January 17, 1980, he was indicted by a grand jury. Unable to post bond, the defendant remained incarcerated from the time of his arrest until October 28, 1980, a period in excess of thirteen months, at which time the felony murder charge against him was terminated by the entry of a nolle prosequi. Thereafter, the state opened the

nolle and the defendant was rearrested for felony murder on July 24, 1981. He was again indicted on that charge on October 16, 1981. Trial began on December 2, 1981, and the defendant was found guilty as charged on December 10, 1981.

The defendant claims that the delay of almost twenty-seven months between his arrest on September 11, 1979, and the commencement of his trial on December 2, 1981, violated his right to a speedy trial under the sixth amendment to the United States constitution and article first,§ 8, of the Connecticut constitution. "The Supreme Court of the United States and this court have identified four factors which form the matrix of the defendant's constitutional right to speedy adjudication: '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' *Barker* v. *Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State* v. *Lloyd,* 185 Conn. 199, 208, 440 A.2d 867 (1981); *State* v. *Nims,* 180 Conn. 589, 591, 430 A.2d 1306 (1980)." *State* v. *Johnson,* 190 Conn. 541, 544–45, 461 A.2d 981 (1983). None of these factors standing alone would demand a set disposition; rather, it is the total mix which determines whether the defendant's right was violated. *State* v. *Nims,* supra, 591–92.

The first issue which we address is the length of the delay. The defendant claims that the entire twenty-seven month period must be considered pretrial delay for purposes of assessing his speedy trial claim. The state, on the other hand, contends that, under *United States* v. *MacDonald,* 456 U.S. 1, 102 S. Ct. 1497, 71 L. Ed. 2d 696 (1982), and *State* v. *Lloyd,* supra, the relevant period of pretrial delay for sixth amendment purposes does not include the nine month period between the state's entry of the nolle, on October 28, 1980, and the defendant's rearrest on July 24, 1981. The speedy trial clause "is activated only when a criminal prose-

cution has begun and extends only to those persons who have been "accused" in the course of that prosecution." *United States* v. *Marion,* 404 U.S. 307, 313, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971). In *United States* v. *MacDonald,* supra, 7, the court further held that the "Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges. Any undue delay after charges are dismissed, like any delay before charges are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause." Whether the nine month period between the nolle and the defendant's rearrest should be considered pretrial delay thus depends upon two factors. The first is whether the state was "acting in good faith" when it nolled the charges against the defendant. The second concerns the effect of a nolle prosequi under our law and, specifically, whether it may be considered the functional equivalent of a dismissal for purposes of speedy trial analysis.

The defendant claims for the first time on appeal that the state nolled the felony murder charge against him in bad faith. This claim must be considered in context. According to the state's theory of the case, the defendant, McCoy and Browdy had gone to Blue's apartment to commit a robbery. McCoy and Browdy were alleged to have acted as "lookouts" while the defendant knocked on Blue's door. When Blue answered the door the defendant produced a handgun and demanded money. During a struggle for the handgun Blue was shot. Consequently, the state attempted to arrange a bargain with McCoy in exchange for his testimony against the defendant. By October of 1980, the state's efforts to procure McCoy's testimony were unsuccessful. Browdy at the time was a fugitive from justice. McCoy was tried first and, in late October, 1980, a jury acquitted him of felony murder but found him guilty of robbery in the first degree.

Thereafter, juror selection commenced in preparation for the defendant's trial. After eleven jurors had been selected, the trial court, on October 28, 1980, conducted a hearing on the defendant's motion to suppress the handgun allegedly used in Blue's murder. McCoy was called to the witness stand and, despite warnings from the court that he might be held in contempt, persisted in his refusal to testify against the defendant. He also stated that he would not testify if called as a witness at the defendant's trial. After McCoy had concluded his testimony, the state nolled the charge of felony murder against the defendant. The state asserted as its reason for the nolle that without the testimony of McCoy or Browdy the remaining evidence against the defendant was insufficient to connect him with the incident leading to Blue's death. The assistant state's attorney further stated for the record that "if I felt there would be no way in the future to prosecute Mr. Gaston I would certainly go along with or not object to a dismissal but . . . the hope of the State quite frankly is that we will locate Browdy, bring him back in this jurisdiction and with his cooperation bring [the defendant] back to trial." A review of the transcript of the October 28, 1980 proceedings reveals that the defendant moved for acquittal on the basis of unrelated double jeopardy grounds but did not otherwise oppose entry of the nolle.

On this record we are unable to conclude that the nolle was entered in bad faith. The defendant claims on appeal that bad faith may be inferred from the fact that the state was aware, on October 28, 1980, that McCoy would continue to assert his fifth amendment privilege. We disagree. Irrespective of McCoy's assertion of that privilege prior to his trial, in October, 1980, the state may reasonably have believed that its bargaining position with respect to McCoy would be enhanced after his conviction for robbery in the first degree.

McCoy, when he reasserted his refusal to testify during the October 28, 1980 proceeding, had yet to be sentenced on his robbery conviction. The trial court informed McCoy that his decision to testify against the defendant would be a consideration at the time of sentencing. The state, while aware that McCoy did not desire to testify against the defendant, obviously hoped that he would change his mind in light of his forthcoming sentencing. In fact, McCoy eventually did reverse himself and testify against the defendant at his trial. We find no support in the record for the defendant's contention that the nolle was entered in bad faith.

We must also determine whether the nolle entered in this case was the functional equivalent of a dismissal for purposes of speedy trial analysis. In *United States v. MacDonald,* supra, the government reindicted the defendant on murder charges more than two years after those same charges had been dismissed. The Supreme Court held that because the speedy trial guarantee extends only to those persons who stand accused of committing a crime, that guarantee did not apply after charges had formally been dismissed and before prosecution was reinitiated. Id.

We recognize that the prosecution in *MacDonald* was terminated by *dismissal* while the present case involves the entry of a nolle prosequi. Nevertheless, we do not believe that the holding in *MacDonald* may be distinguished on that basis. The dismissal in *MacDonald,* like the nolle in the present case, did not bar later reinstitution of the same charges against the defendant. *Hing Wan Wong* v. *Liquor Control Commission,* 160 Conn. 1, 5, 273 A.2d 709 (1970), cert. denied, 401 U.S. 938, 91 S. Ct. 931, 28 L. Ed. 2d 218 (1971). As with the dismissal in *MacDonald,* the effect of the nolle was to "end pending proceedings without an acquittal and without placing the defendant in jeopardy." *State* v. *Lloyd,* supra, 201. Under our rules "[t]he entry of a nolle

prosequi terminates the prosecution and the defendant shall be released from custody. If subsequently the prosecuting authority decides to proceed against the defendant, a new prosecution must be initiated." Practice Book § 727. Under our statutes "the entry of a nolle has no effect on the running of the statute of limitations; furthermore, reprosecution more than thirteen months after the entry of a nolle becomes difficult because after that time 'all police and court records and records of the state's or prosecuting attorney . . . pertaining to such charge shall be erased.' General Statutes § 54-142a (c)." *State* v. *Lloyd,* supra, 210–11; cf. *United States* v. *MacDonald,* supra, 8 n.8; *Klopfer* v. *North Carolina,* 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967).

The United States Supreme Court has identified the policies served by the speedy trial clause. "The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States* v. *MacDonald,* supra, 8. It is significant that under our practice a nolle implicates none of these concerns. Upon entry of a nolle, the individual concerned is no longer a defendant in a criminal case. He stands accused of no crime and his release is unconditional. After entry of the nolle the defendant in the present case, like MacDonald, "was not under arrest, not in custody, and not subject to any 'criminal prosecution.' " Id., 10. We conclude that the nine month period between the nolle and the defendant's rearrest is not properly chargeable as pretrial delay for purposes of speedy trial analysis.

As our discussion indicates, we consider eighteen months to be the operative period of delay. The state

concedes that an eighteen month delay, while not presumptively unreasonable, is sufficiently long to trigger inquiry into the remaining factors set forth in *Barker* v. *Wingo,* supra. We proceed to a consideration of those factors.

The record does not reflect any findings by the trial court as to the cause of the delay in this case. We find this deficiency in the record quite understandable in view of the defendant's somewhat indifferent assertion of his right to a speedy trial during the proceedings below. The defendant through counsel filed a motion for a speedy trial on March 25, 1980, less than seven months after his arrest on September 11, 1979. Although the record does not clearly indicate, it appears that that motion was denied summarily by the court on the day that it was filed. The defendant has not appealed from the denial of his March 25, 1980 motion, and, given the time frame which it addressed, we do not believe that an appeal from the denial of that motion would likely have been successful. Approximately six months later, on September 29, 1980, the defendant filed a pro se motion for a speedy trial. The record does not indicate whether this motion was ever granted, denied or even seen by the court. In any event, as previously discussed, the defendant's case was nolled less than one month later, on October 28, 1980.

The defendant on appeal claims that "the reason for the delay was the prosecutor's effort to gain an advantage over the defendant in the trial of the case." The basis of this claim is the alleged bad faith of the prosecutor in entering the nolle on October 28, 1980. We have already considered and resolved this claim adversely to the defendant. We previously noted that the defendant did not assert bad faith during the proceedings when the nolle was entered and that, while he did move for acquittal at that time on the basis of unrelated double jeopardy grounds, the state's entry

of the nolle was not otherwise opposed. If the defendant sought further elucidation of the state's reasons for entering the nolle, he could have moved for a dismissal under then Public Acts 1980, No. 80-313, now codified in General Statutes § 54-56b.[1]

We have held that even *after* the entry of a nolle the court retains limited jurisdiction over the case to hear such matters as the defendant's motion to dismiss based on the alleged denial of the right to a speedy trial. *State v. Lloyd,* supra. Although *Lloyd* was decided after the October 28, 1980 proceedings, its holding assumed a fortiori that such a motion was properly raised *before* the entry of a nolle. See General Statutes § 54-56.[2] Moreover, the defendant does not address in his brief any delay occurring after the October 28, 1980 nolle. Indeed, after the filing of his September 29, 1980 motion, the defendant did not again advert to his right to a speedy trial until August 17, 1984, when he filed an amended preliminary statement of issues on appeal with this court. We assume that some of the delay occurring before entry of the nolle was due to the state's efforts to recruit McCoy as a witness. We note that the state may, within reasonable limits, postpone the trial of an accused while it attempts to gain the tes-

[1] "[General Statutes] Sec. 54-56b. RIGHT TO DISMISSAL OR TRIAL ON NOLLE. A nolle prosequi may not be entered as to any count in a complaint or information if the accused objects to the nolle prosequi and demands either a trial or dismissal, except with respect to prosecutions in which a nolle prosequi is entered upon a representation to the court by the prosecuting official that a material witness has died, disappeared or become disabled or that material evidence has disappeared or has been destroyed and that a further investigation is therefore necessary."

[2] "[General Statutes] Sec. 54-56. DISMISSAL OF INFORMATION BY COURT. All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

timony of his accomplice. *Barker* v. *Wingo, supra,* 534; *State* v. *Davis,* 192 Conn. 739, 743–45, 474 A.2d 776 (1984). After the nolle, prosecution was not reinitiated until the defendant's rearrest on July 24, 1981, and his reindictment on October 16, 1981. Thereafter, pretrial proceedings commenced on November 18, 1981, and the trial concluded with a guilty verdict on December 10, 1981.

In view of the inadequate record below and the defendant's failure on appeal "to quantify separately any unjustifiable delay," it is "extremely difficult for us to conclude on review that impermissible reasons contributed substantially to the delay challenged by the defendant." *State* v. *Morrill,* 197 Conn. 507, 525, 498 A.2d 76 (1985). Upon consideration of the reasons for delay and the defendant's assertion of his right to a speedy trial, we do not find these factors to weigh heavily in the defendant's favor.

We next consider the fourth *Barker* factor of prejudice. As we stated in *State* v. *Lloyd, supra,* 209, "the linchpin of the speedy trial claim is a showing of prejudice . . . ." "While it is possible that the other factors together might make a showing of prejudice unnecessary in a given case; *Moore* v. *Arizona,* 414 U.S. 25, 26, 94 S. Ct. 188, 38 L. Ed. 2d 183 (1973); we do not find that situation here." *State* v. *Morrill, supra,* 526. The defendant claims that the "primary prejudice" suffered in this case "was that he spent thirteen months in pre-trial incarceration which have been totally lost to his life." As we have already noted, the defendant, unable to post bond, was incarcerated from his arrest on September 11, 1979, until his case was nolled on October 28, 1980. We recognize that the avoidance of unnecessarily protracted pretrial incarceration is at the core of the speedy trial guarantee, but the fact of incarceration alone is not enough to invoke the sanctions of the speedy trial clause. The defendant does not con-

tend that pretrial delay in any way inhibited his defense on the merits of the felony murder charge against him. See *Barker* v. *Wingo*, supra, 532. A consideration of all the factors in this case leads us to conclude that neither the defendant's sixth amendment nor state constitutional right to a speedy trial was violated.

We finally address the defendant's alternative claim that the pretrial delay in this case denied him due process of law. To establish a due process violation because of pretrial delay, "the defendant must show both that actual substantial prejudice resulted from the delay and that the reasons for the delay were wholly unjustifiable, as where the state seeks to gain a tactical advantage over the defendant." *State* v. *Morrill*, supra, 522. The defendant concedes that his due process claim is "substantially similar" to his speedy trial claim. In light of our disposition of issues already considered, we do not believe that the defendant has shown that the delay in his case was wholly unjustifiable or that it resulted in substantial prejudice. Therefore, we conclude that the pretrial delay did not deny the defendant due process of law.

There is no error.

In this opinion the other judges concurred.