## ALEXANDER CISLO v. CITY OF SHELTON
### (15451)

Callahan, C. J., and Borden, Berdon, Palmer and Ment, Js.

Argued January 21—officially released April 29, 1997

*Lee K. Tiernan*, with whom were *Steven J. Errante* and, on the brief, *Hugh F. Keefe*, for the appellant (plaintiff).

*Thomas J. Welch,* with whom was *John H. Welch, Jr.,* for the appellee (defendant).

*Opinion*

BORDEN, J. The dispositive issue in this appeal is whether a criminal charge has been "dismissed" within the meaning of General Statutes (Rev. to 1995) § 53-39a,[1] which provides for the indemnification of law enforcement officers under certain circumstances, when the charge against the officer has been nolled and the pertinent records have been erased pursuant to General Statutes (Rev. to 1995) § 54-142a (c).[2]

---

[1] General Statutes (Rev. to 1995) § 53-39a provides: "Indemnification of police, including state capitol security police, when criminal charge dismissed. Whenever, in any prosecution of an officer of the division of state police within the department of public safety, or a member of the office of capitol security or any person appointed under section 29-18 as a special policeman for the state capitol building and grounds, the legislative office building and parking garage and related structures and facilities, and other areas under the supervision and control of the joint committee on legislative management, or a local police department for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer found not guilty, such officer shall be indemnified by his employing governmental unit for economic loss sustained by him as a result of such prosecution, including the payment of any legal fees necessarily incurred."

Although § 53-39a has been amended by No. 96-219 of the 1996 Public Acts, the amendments are not relevant to this appeal. Hereafter, all references to § 53-39a are to the 1995 revision.

[2] General Statutes (Rev. to 1995) § 54-142a provides: "Erasure of criminal records. (a) Whenever in any criminal case, on or after October 1, 1969, the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the time to file a writ of error or take an appeal, if an appeal is not taken, or upon final determination of the appeal sustaining a finding of not guilty or a dismissal, if an appeal is taken. Nothing in this subsection shall require the erasure of any record pertaining to a charge for which the defendant was found not guilty by reason of mental disease or defect or guilty but not criminally responsible by reason of mental disease or defect.

"(b) Whenever in any criminal case prior to October 1, 1969, the accused, by a final judgment, was found not guilty of the charge or the charge was dismissed, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge

The plaintiff appeals from the judgment of the Appellate Court following our grant of certifica-

shall be erased by operation of law and the clerk or any person charged with the retention and control of such records shall not disclose to anyone their existence or any information pertaining to any charge so erased; provided nothing in this subsection shall prohibit the arrested person or any one of his heirs from filing a petition for erasure with the court granting such not guilty judgment or dismissal, or, where the matter had been before a municipal court, a trial justice, the circuit court or the court of common pleas with the records center of the judicial department and thereupon all police and court records and records of the state's attorney, prosecuting attorney or prosecuting grand juror pertaining to such charge shall be erased. Nothing in this subsection shall require the erasure of any record pertaining to a charge for which the defendant was found not guilty by reason of mental disease or defect.

"(c) Whenever any charge in a criminal case has been nolled in the superior court, or in the court of common pleas, if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased. However, in cases of nolles entered in the superior court, court of common pleas, circuit court, municipal court or by a justice of the peace prior to April 1, 1972, such records shall be deemed erased by opération of law and the clerk or the person charged with the retention and control of such records shall not disclose to anyone their existence or any information pertaining to any charge so erased, provided nothing in this subsection shall prohibit the arrested person or any one of his heirs from filing a petition to the court or to the records center of the judicial department, as the case may be, to have such records erased, in which case such records shall be erased. Whenever any charge in a criminal case has been continued at the request of the prosecuting attorney, and a period of thirteen months has elapsed since the granting of such continuance during which period there has been no prosecution or other disposition of the matter, the charge shall be construed to have been nolled as of the date of termination of such thirteen-month period and such erasure may thereafter be effected or a petition filed therefor, as the case may be, as provided in this subsection for nolled cases.

"(d) Whenever prior to October 1, 1974, any person who has been convicted of an offense in any court of this state has received an absolute pardon for such offense, such person or any one of his heirs may, at any time subsequent to such pardon, file a petition with the superior court at the location in which such conviction was effected, or with the superior court at the location having custody of the records of such conviction or with the records center of the judicial department if such conviction was in the court of common pleas, circuit court, municipal court or by a trial justice court, for an order of erasure, and the superior court or records center of the judicial department shall direct all police and court records

tion.[3] A divided panel of the Appellate Court concluded that the provisions of § 54-142a (c) did not effectuate

and records of the state's or prosecuting attorney pertaining to such case to be erased. Whenever such absolute pardon was received on or after October 1, 1974, such records shall be erased.

"(e) The clerk of the court or any person charged with retention and control of such records in the records center of the judicial department or any law enforcement agency having information contained in such erased records shall not disclose to anyone, except the subject of the record, upon submission pursuant to guidelines prescribed by the Office of the Chief Court Administrator of satisfactory proof of the subject's identity, information pertaining to any charge erased under any provision of this section and such clerk or person charged with the retention and control of such records shall forward a notice of such erasure to any law enforcement agency to which he knows information concerning the arrest has been disseminated and such disseminated information shall be erased from the records of such law enforcement agency. Such clerk or such person, as the case may be, shall provide adequate security measures to safeguard against unauthorized access to or dissemination of such records or upon the request of the accused cause the actual physical destruction of such records. No fee shall be charged in any court with respect to any petition under this section. Any person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath.

"(f) Upon motion properly brought, the court or a judge thereof, if such court is not in session, may order disclosure of such records (1) to a defendant in an action for false arrest arising out of the proceedings so erased or (2) to the prosecuting attorney and defense counsel in connection with any perjury charges which the prosecutor alleges may have arisen from the testimony elicited during the trial. Such disclosure of such records is subject also to any records destruction program pursuant to which the records may have been destroyed. The jury charge in connection with erased offenses may be ordered by the judge for use by the judiciary, provided the names of the accused and the witnesses are omitted therefrom.

"(g) The provisions of this section shall not apply to any police or court records or the records of any state's attorney or prosecuting attorney with respect to any count of any information or indictment which was nolled or dismissed if the accused was convicted upon one or more counts of the same information or indictment."

Although § 54-142a has been amended by No. 95-133 of the 1995 Public Acts, and by Nos. 96-63 and 96-79 of the 1996 Public Acts, the amendments are not relevant to this appeal. Hereafter, unless otherwise indicated, all references to § 54-142a are to the 1995 revision.

[3] We granted the defendant's petition for certification to appeal, limited to the following issue: "Under the circumstances of this case, was the

a dismissal for purposes of § 53-39a, and affirmed the summary judgment of the trial court in favor of the defendant. *Cislo* v. *Shelton*, 40 Conn. App. 705, 712–14, 673 A.2d 134 (1996). We conclude, contrary to the Appellate Court, that an automatic erasure under § 54-142a (c) that occurs thirteen months following the entry of a nolle prosequi constitutes a dismissal within the meaning of § 53-39a. Accordingly, we reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the relevant facts and procedural history. "On October 12, 1989, the plaintiff, a Shelton police officer, was arrested and charged with the sexual assault of a police informant. Subsequent to the arrest of the plaintiff, the informant disappeared. On January 24, 1991, the assistant state's attorney entered a nolle prosequi in open court in the criminal action against the plaintiff.[4] The assistant state's attorney entered the nolle because of the disappearance of the informant. The plaintiff's counsel in the criminal action objected to the entry of the nolle and moved to dismiss the case. The trial court declined to dismiss the case and accepted the entry of the nolle

plaintiff entitled to indemnification under General Statutes § 53-39a?" *Cislo* v. *Shelton*, 237 Conn. 924, 677 A.2d 946 (1996).

[4] "Practice Book §§ 725 and 727 and General Statutes § 54-142a (c) address the entry and effect of a nolle prosequi. Concerning the entry of a nolle, Practice Book § 725 provides: 'A prosecuting authority shall have the power to enter a nolle prosequi in a case. It shall be entered upon the record after a brief statement by the prosecuting authority in open court of the reasons therefor.' Concerning the effect of a nolle, Practice Book § 727 provides: 'The entry of a nolle prosequi terminates the prosecution and the defendant shall be released from custody. If subsequently the prosecuting authority decides to proceed against the defendant, a new prosecution must be initiated.' Furthermore, General Statutes § 54-142a (c) provides in relevant part: 'Whenever any charge in a criminal case has been nolled in the superior court, or in the court of common pleas, if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased. . . .' " *Cislo* v. *Shelton*, supra, 40 Conn. App. 706–707 n.1.

pursuant to [General Statutes § 54-56b[5] and] Practice Book § 726.[6]

"On March 4, 1992, the plaintiff brought [this] action against the defendant pursuant to General Statutes § 53-39a,[7] seeking indemnification for the economic losses he incurred in the defense of the criminal charges brought against him. Subsequent to the filing of the complaint, the plaintiff and the defendant filed cross motions for summary judgment. On January 11, 1994, the trial court, *Rush, J.*, denied the plaintiff's motion for summary judgment and granted the defendant's cross motion. In its memorandum of decision regarding the cross motions for summary judgment, the trial court determined that the plaintiff was not entitled to relief under § 53-39a. The trial court found as a matter of law that the plaintiff was not entitled to relief because § 53-

[5] General Statutes § 54-56b provides: "Right to dismissal or trial on nolle. A nolle prosequi may not be entered as to any count in a complaint or information if the accused objects to the nolle prosequi and demands either a trial or dismissal, except with respect to prosecutions in which a nolle prosequi is entered upon a representation to the court by the prosecuting official that a material witness has died, disappeared or become disabled or that material evidence has disappeared or has been destroyed and that a further investigation is therefore necessary."

[6] "Practice Book § 726 provides: 'Where a prosecution is initiated by complaint or information, the defendant may object to the entering of a nolle prosequi at the time it is offered by the prosecuting authority and may demand either a trial or a dismissal, except when a nolle prosequi is entered upon a representation to the judicial authority by the prosecuting authority that a material witness has died, disappeared or become disabled or that material evidence has disappeared or has been destroyed and that a further investigation is therefore necessary.' See also General Statutes § 54-56b, which provides: 'A nolle prosequi may not be entered as to any count in a complaint or information if the accused objects to the nolle prosequi and demands either a trial or dismissal, except with respect to the prosecutions in which a nolle prosequi is entered upon a representation to the court by the prosecuting official that a material witness has died, disappeared or become disabled or that material evidence has disappeared or has been destroyed and that a further investigation is therefore necessary.' " *Cislo* v. *Shelton*, supra, 40 Conn. App. 707 n.2.

[7] See footnote 1.

39a provides for indemnification only where the criminal charges against a police officer are dismissed or where the officer is found not guilty, and that here, the underlying criminal action against the plaintiff was terminated by the entry of a nolle prosequi.[8] On January 27, 1994, judgment was rendered in favor of the defendant and this appeal [to the Appellate Court] followed. In his initial appeal, the plaintiff claim[ed] that the trial court improperly granted the defendant's motion for summary judgment.

"On April 16, 1994, during the pendency of his appeal, the plaintiff filed a motion in the trial court seeking to dismiss the criminal charges against him that had previously been nolled. On April 27, 1994, the trial court in the criminal action, *Skolnick, J.*, granted the motion to dismiss. On May 3, 1994, the plaintiff filed a motion in the trial court to open the judgment and to set aside the summary judgment in the present action, claiming that the recent dismissal of the nolled criminal charges made him eligible for indemnification under § 53-39a. On August 19, 1994, the trial court in the civil action, *Rush, J.*, denied the plaintiff's motion to open and found that because the criminal charges against the plaintiff had been nolled, they were no longer pending and could not have been properly dismissed for the purpose of seeking indemnification under § 53-39a. On September 7, 1994, the plaintiff filed an amendment to his appeal, adding the claim that the trial court improperly denied the plaintiff's motion to open the judgment and to set aside the summary judgment." *Cislo* v. *Shelton*, supra, 40 Conn. App. 706–709.

The Appellate Court affirmed the trial court's judgment, concluding that: (1) § 53-39a does not provide

[8] The trial court also concluded that the plaintiff's motion for summary judgment could not be granted because there was a question of fact as to whether he had been acting in the course of his duty when the alleged sexual assault took place. That issue is not before us in this appeal and will remain at issue in this case following our remand.

for indemnification when criminal charges against a police officer have been nolled; and (2) the subsequent "dismissal" of the charges was of no effect because, following the nolle, there were no criminal charges pending against the plaintiff that could have been dismissed. Id., 715–16. This certified appeal followed.

The plaintiff renews in this court the two claims that the Appellate Court rejected, namely, that: (1) under § 54-142a (c), a nolle followed by thirteen months is tantamount to a dismissal, thereby qualifying the plaintiff for indemnification under § 53-39a; and (2) in the alternative, the dismissal entered by Judge Skolnick was sufficient to qualify the plaintiff for indemnification under § 53-39a. We conclude that the entry of a nolle followed by the elapse of the statutory period of thirteen months, which results in the mandatory erasure of the pertinent records pursuant to § 54-142a (c), constitutes a dismissal for purposes of § 53-39a. We therefore need not consider the plaintiff's second claim.

Section 54-142a (c) mandates the automatic erasure of records following the entry of a nolle and the passage of thirteen months. Whether this application constitutes a dismissal for purposes of § 53-39a is a question of statutory interpretation. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *United*

*Illuminating Co.* v. *New Haven,* 240 Conn. 422, 431, 692 A.2d 742 (1997). Insofar as the language of the statute will permit, we interpret it in accordance with the purpose of the statute, because legislation is a purposive act. Id., 450.

Section 53-39a, which was originally enacted in 1973; see Public Acts 1973, No. 73-627; authorizes indemnification for economic loss, including legal fees, incurred by officers of local police departments who are prosecuted for crimes allegedly committed by them in the course of their duties when the charges against them are dismissed or they are found not guilty. See, e.g., *Link* v. *Shelton,* 186 Conn. 623, 627, 443 A.2d 902 (1982). The general purpose of the statute is to permit police officers to recoup the necessary expenses that they have incurred in defending themselves against unwarranted criminal charges arising out of their conduct in the course of their employment. Id., 628–29. Whether the charges are unwarranted, however, is determined objectively, namely, by whether an officer has been found not guilty or the charges have been dismissed. The plaintiff in the present case does not claim that he was found not guilty of the charges. The question, therefore, is whether the charges were "dismissed" within the meaning of § 53-39a.

We begin our inquiry by acknowledging the strength of the defendant's two principal contentions. The first is that § 53-39a, as a statute that abrogates or modifies governmental immunity, must be strictly construed. *Rawling* v. *New Haven,* 206 Conn. 100, 105, 537 A.2d 439 (1988). The second is that terms such as "dismissal" and "nolle" are ordinarily used as terms of art and, as such, are to be construed in accordance with their "peculiar and appropriate meaning in the law . . . ." General Statutes § 1-1 (a); *Link* v. *Shelton,* supra, 186

Conn. 627.[9] These two contentions appear to lead to the conclusion that a nolle—even a nolle ultimately resulting in the erasure of records pursuant to § 54-142a (c)—cannot be considered to be a dismissal under § 53-39a. We nonetheless conclude that the entry of a nolle plus the passage of thirteen months, which results in the automatic erasure of relevant records under § 54-142a (c), constitutes a dismissal for the purposes of § 53-39a.

First, although the term "dismissed" as used in § 53-39a was undoubtedly used as a term of art,[10] the legislative history of § 54-142a (c) indicates that the legislature did not intend the term "nolle" as used in § 54-142a (c) necessarily to be restricted to its ordinary specialized meaning. Instead, the indication is that the legislature specifically designed § 54-142a (c) in order to avoid the speedy trial violations that the legislature feared otherwise might occur. That fear was based on its interpretation of the decision of the United States Supreme Court in *Klopfer* v. *North Carolina*, 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967).

The erasure provisions of § 54-142a (c) have their origins in legislation enacted in 1963. Prior to 1963, General Statutes (1958 Rev.) § 54-90, which is the statutory progenitor of § 54-142a (c),[11] provided simply that

---

[9] As ordinarily understood, the two terms carry certain procedural and doctrinal differences. A dismissal is an act of the court, whereas a nolle is, except when limited by statute or rule of practice; see, e.g., General Statutes § 54-56b and Practice Book § 726; a unilateral act by a prosecutor, which ends the "pending proceedings without an acquittal and without placing the defendant in jeopardy." *State* v. *Lloyd*, 185 Conn. 199, 201, 440 A.2d 867 (1981).

[10] We reach this conclusion because the term "dismissed" is a specialized legal term with a particular meaning, and there is no legislative history for § 53-39a or other contextual evidence to suggest that the legislature was using the term in that statute in a sense other than its specialized meaning.

[11] Until 1979, the erasure provisions at issue in the present case were contained in § 54-90. In that year, however, as part of a technical revision of the statutes, those provisions were transferred to § 54-142a (c).

whenever a criminal case was nolled, "the clerk of the court shall make a record of such nolle." In 1963, § 54-90 was amended by No. 482 of the 1963 Public Acts, which required that the clerk also record not guilty findings, and provided that, upon a nolle or not guilty finding, "the court . . . upon petition of the arrested person or his heirs, may order all police and court records and records of the state's or prosecuting attorney pertaining to such case to be erased, provided at least three years have elapsed from the date of arrest." A petition to the court and court action were thus required for erasure of records in cases in which either a nolle or a not guilty finding had been entered.

In 1967, § 54-90 was amended further by No. 181 of the 1967 Public Acts in three significant respects: (1) the erasure of records was made possible when the charges had been dismissed, as well as when they had been nolled or the defendant had been found not guilty; (2) the waiting period was reduced from three years from the date of the arrest to one year from the date of nolle, dismissal or not guilty judgment; and (3) the legal effect of the erasure was specified—"[n]o person who shall have been the subject of such an erasure order shall be deemed to have been arrested ab initio within the meaning of the general statutes with respect to the proceedings so erased." General Statutes (Rev. to 1968) § 54-90.[12] Consequently, an individual who suc-

[12] General Statutes (Rev. to 1968) § 54-90 provided: "Erasure of arrest and court records after nolles, dismissals and not guilty findings. Whenever any charge in a criminal case has been nolled or dismissed, or by a final judgment the accused has been found not guilty, of such charge in the superior court, court of common pleas or in the circuit court, or in a municipal court or by a justice of the peace, the arrested person or any one of his heirs may file a petition with the court granting the nolle, dismissal or such not guilty judgment, or the circuit court in any matter pertaining to a municipal court or a justice of the peace, for an order of erasure and if such court finds that at least one year has elapsed since such nolle, dismissal or such not guilty judgment, it shall order all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining

cessfully petitioned the court for erasure legally could state that he or she had not been arrested with respect to the relevant charges.

The next significant statutory amendment took place in 1969. By virtue of No. 229, § 1, of the 1969 Public Acts, § 54-90 was divided into subsections (a) through (e). Subsection (a) dealt with findings of not guilty and dismissals, and provided that upon such a finding or dismissal "all police and court records and records of the state's or prosecuting attorney pertaining to such charge *shall be immediately and automatically erased.*" (Emphasis added.) General Statutes (Rev. to 1971) § 54-90 (a). Subsection (b) dealt with not guilty findings and dismissals *prior to October 1, 1969,* and provided for a petition by the individual, or his heirs, for erasure. Subsection (c) dealt with nolles, and continued to provide that a petition for erasure could be filed after the passage of one year from the date of the nolle. Subsection (d) dealt with erasure of records when an absolute pardon had been granted, and provided for a petition procedure similar to that of nolles or pre-October 1, 1969 dismissals. Subsection (e) clarified the meaning of erasure by providing that the "clerk of the court . . . shall not disclose to anyone information pertaining to any charge erased under any provision of this section. . . ." General Statutes (Rev. to 1971) § 54-90 (e).

---

to such charge to be erased. Such petition shall have appended thereto a summons and proposed order, and a copy of such petition and the summons and proposed order shall be served, in the manner provided in the practice book for the service of pleadings, at least fourteen days before the return day specified in such summons by mail, on each clerk, chief clerk, police official, and other person to whom such order will be directed. The clerk of the court or chief clerk of the circuit court, as the case may be, shall not disclose to anyone information pertaining to the charge so erased. No fee shall be charged in any such court with respect to such petition. No person who shall have been the subject of such an erasure order shall be deemed to have been arrested ab initio within the meaning of the general statutes with respect to the proceedings so erased."

In 1972, § 54-90 (c) was amended by No. 20, § 2, of the 1972 Public Acts, which drew a functional equivalence between nolled cases and cases in which both a continuance had been granted and "there ha[d] been no prosecution or other disposition of the matter" for a period of one year. In such continued cases, the act mandated that "the charge shall be construed to have been nolled as of the date of termination of such one-year period and a petition for erasure may thereafter be filed as provided in this subsection for nolled cases." Public Acts 1972, No. 20, § 2.

In 1973, the legislature again amended § 54-90 (c) by No. 73-276 of the 1973 Public Acts. First, the one year period for nolled, but not for continued, cases was changed to thirteen months. Second, the petition procedure was eliminated for both types of cases, and the statute specifically provided that, with respect to nolled cases, "if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney . . . pertaining to such charge shall be erased. . . ."[13] Public Acts 1973, No. 73-276, § 1. Thus, for the first time, the notion of an *automatic* erasure of records, rather than erasure triggered by a petition, was inserted into the statute. The legislative debate indicates that this automatic erasure mechanism had two purposes. The first was administrative: eliminating the petition process would ease the administrative burden on the courts.[14] The second was substantive: elimination of the petition procedure

---

[13] Similarly, with respect to continued cases, § 54-90 (c) was amended to provide that, upon completion of the one year period, "the charge shall be construed to have been nolled as of the date of termination of such one-year period and erasure may thereafter be effected as provided in this subsection for nolled cases." Public Acts 1973, No. 73-276, § 1.

[14] In the House floor debates, Representative James F. Bingham stated: "It is the expectation that this procedure will simplify the practice especially in the Circuit Courts, not requiring people to petition the court and . . . reducing motion calendar business." 16 H.R. Proc., Pt. 8, 1973 Sess., p. 4028.

would be fairer to those who might not have known that they needed to file a petition.[15] The legislative colloquy also indicates a general legislative view that the erasure of records of nolled cases should be treated like the erasure of records of dismissed cases.[16]

The legislative record of the 1973 amendment, however, does not disclose the origin or purpose of the thirteen month period. The legislature revisited the erasure provisions of § 54-90 (c) the very next year, however, and the legislative history of *that* amendment does shed some light on this issue.

By virtue of No. 74-52 of the 1974 Public Acts,[17] the legislature made two significant changes in § 54-90 (c).

[15] In the House floor debates, Representative William R. Ratchford stated: "The fact of the matter is that far too many people, especially young people, after their case is nolled, never take that step to petition for the erasure and then when it comes time to apply for college, apply for a job, or attempt to enter the service, find out in fact that they still do have a record.

"This will go a long way toward correcting it and will also eliminate discrimination that now takes place between someone who may be represented and someone who isn't. Normally the attorney will ticket his book for a year later and then petition the court. The unrepresented person frequently does not and ends up unnecessarily with a record." 16 H.R. Proc., Pt. 8, 1973 Sess., p. 4029.

[16] In the House floor debates, Representative Muriel Yacavone asked: "[I]s there any provision for dismissal of charges, is that handled in the same way that nolles are handled? Has there been any action for erasure of dismissal?" 16 H.R. Proc., Pt. 8, 1973 Sess., p. 4031. Representative James F. Bingham responded: "When a judge enters a dismissal that's the termination of the case. It's erased." Id.

This is consistent with the then existing provisions of § 54-90 (a) that, upon a dismissal, "all police and court records and records of the state's or prosecuting attorney pertaining to such charge shall be immediately and automatically erased." General Statutes (Rev. to 1972) § 54-90 (a).

[17] Public Acts 1974, No. 74-52 provided: "AN ACT CONCERNING AUTOMATIC ERASURE OF ARREST PRIOR TO APRIL 1, 1972.

"Section 1. Subsection (c) of section 54-90, as amended by section 1 of number 73-276 of the public acts of 1973, is repealed and the following is substituted in lieu thereof:

"(c) Whenever any charge in a criminal case has been nolled in the superior court[, court of common pleas] or in the circuit court, [or in a municipal court or by a justice of the peace,] if at least thirteen months have elapsed

First, it changed the one year time period applicable to continued cases to thirteen months, thus rendering that procedure for erasure of records consistent with the procedure for nolled cases. Second, it specifically provided, for both types of cases, that "such records shall be deemed erased by operation of law and the clerk or chief clerk or any person charged with the retention and control of such records shall not disclose to anyone their existence or any information pertaining to any charge so erased . . . ."[18] Public Acts 1974, No. 74-52, § 1.

The legislative debate in 1974 demonstrates that the legislature intended the 1974 legislation to be largely a clarification of its intent in enacting the 1973 legislation.[19] The debate indicates that the legislature primarily

since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased, PROVIDED IN CASES OF NOLLES ENTERED IN THE SUPERIOR COURT, COURT OF COMMON PLEAS, CIRCUIT COURT, MUNICIPAL COURT OR BY A JUSTICE OF THE PEACE PRIOR TO APRIL 1, 1972, SUCH RECORDS SHALL BE DEEMED ERASED BY OPERATION OF LAW AND THE CLERK OR CHIEF CLERK OR ANY PERSON CHARGED WITH THE RETENTION AND CONTROL OF SUCH RECORDS SHALL NOT DISCLOSE TO ANYONE THEIR EXISTENCE OR ANY INFORMATION PERTAINING TO ANY CHARGE SO ERASED; PROVIDED NOTHING IN THIS SECTION SHALL PROHIBIT THE ARRESTED PERSON OR ANY ONE OF HIS HEIRS FROM FILING A PETITION TO THE APPROPRIATE COURT TO HAVE SUCH RECORDS PHYSICALLY ERASED, IN WHICH CASE SUCH RECORDS SHALL BE ERASED. Whenever any charge in a criminal case has been continued in the superior court, or the circuit court, and a period of [one year] THIRTEEN MONTHS has elapsed since the granting of such continuance during which period there has been no prosecution or other disposition of the matter, the charge shall be construed to have been nolled as of the date of termination of such [one-year] THIRTEEN-MONTH period and SUCH erasure may thereafter be effected OR A PETITION FILED THEREFOR, AS THE CASE MAY BE, as provided in this subsection for nolled cases.

"Sec. 2. This act shall take effect from its passage."

[18] Number 74-52 of the 1974 Public Acts also provided for a petition procedure "to have such records *physically* erased . . . ." (Emphasis added.) See footnote 17.

[19] In presenting the bill to the House, Representative Samuel S. Freedman stated: "[T]here has been some misunderstanding about the intent of this

intended to reinforce the ability of those persons whose records had been erased after a nolle to state that, with respect to those erased charges, they had never been arrested.[20] The 1974 legislation was also aimed at easing the administrative burden that the erasure process placed on the courts, by the simple device of expanding the automatic erasure provision for nolled cases, which had been legislated in 1973, to dismissed cases as well.[21] This close relationship between the 1973 and 1974

bill, both this year, and of the bill which it intends to amend. It is my recollection that last year when this bill came to the Judiciary Committee, and that recollection has been confirmed by other members of the committee, that the intent of the Judiciary Committee was that the erasure of nolles should be prospective only and not retrospective.

"In fact, the chairman of the Judiciary Committee informs me that this House was so informed on the floor of the House.

"There has been a great deal of confusion amongst the various jurisdictions of this state. Some areas and some area police forces have felt that it is retrospective—some have felt that it is not retrospective. We have checked and found that there is absolutely no uniformity in the handling of this problem amongst the various towns. Because of this we received requests from police departments backed up by the chief state's attorney and from the chief clerk of the Circuit Court on behalf of the Circuit Court clerks. . . .

"Therefore we are not really changing anything in this bill. What we are doing is clearing up a great deal of confusion and also trying to conform the various towns around the state and help the courts because the worst thing we could have is unequal treatment of people around the state.

"There has been some question, and I know a letter has been sent around that something is being taken away from people. Nothing has ever been given which is being taken away. We are merely trying to clarify what was the intent of the committee and which, I think, otherwise would make for an unwieldy bill." 17 H.R. Proc., Pt. 2, 1974 Sess., pp. 730–32.

[20] In the House floor debates, Representative Bernard L. Avcollie stated: "I do want to establish, for the record, Mr. Speaker, that the intention of this bill was clearly that any individual in the State of Connecticut, who has received a nolle as a result of an arrest and which nolle is thirteen months old, or more, is certainly privileged to answer any questionnaire, or respond to any question . . . any application for employment for college . . . that he has not been arrested and does not have a record of arrest that pertains to that charge. . . . That is the intent of the bill . . . ." 17 H.R. Proc., Pt. 2, 1974 Sess., p. 823.

[21] Representative Samuel S. Freedman stated that the bill "will also help the Court Clerks and ease the burden there." 17 H.R. Proc., Pt. 2, 1974 Sess., p. 822.

amendments leads us to consider their legislative histories together.

The 1974 legislative record reveals the origin and meaning of the thirteen month period instituted for erasure of nolled cases in 1973 and continued cases in 1974. The provision was inspired by the 1967 United States Supreme Court decision in *Klopfer* v. *North Carolina*, supra, 386 U.S. 213.[22] Based on its interpretation of that case, the legislature considered the passage of a thirteen month period after a nolle to be constitutionally mandated, and thus to be the equivalent of, a dismissal.[23]

In *Klopfer*, the court held that the federal constitutional right to a speedy trial applies to the states through the due process clause of the fourteenth amendment, and that this right affords "affirmative protection against an unjustified postponement of trial for an accused discharged from custody . . . ." Id., 219. The court reached this conclusion "in the context of an application of an unusual North Carolina criminal pro-

----

[22] The references in the legislative history to the case of *Proctor* v. *North Carolina*; see footnote 23; are an obvious mistake resulting from the transcription of the taped legislative debate, because *Klopfer* v. *North Carolina*, supra, 386 U.S. 213, is the only United States Supreme Court case that fits the description stated in the debate.

[23] In the House floor debates, Representative Samuel S. Freedman stated: "The period of thirteen months was placed in following the case of [*Klopfer*] v. *North Carolina*"; see footnote 22; "which indicated that a thirteen month period merits a dismissal and the committee shows the cut-off date of April 1, 1972 for very specific reasons because of the effective date of the bill thirteen months later. Anyone after that effective date indeed had a right to rely that his record had been erased. Prior to that date it is also quite obvious that no one has had any remedy taken away from them because they have always had the right to petition.

\* \* \*

"[T]he Supreme Court in the case of [*Klopfer*] v. *North Carolina* has laid down a doctrine which is mandated and states . . . that if there has been no prosecution of the case . . . or disposition of the case for a thirteen month period, if it has simply been continued and continued and continued, that case must constitutionally be dismissed." 17 H.R. Proc., Pt. 2, 1974 Sess., pp. 731, 737.

cedural device known as the 'nolle prosequi with leave.' " Id., 214. Under that procedure, if the prosecutor enters a nolle prosequi with leave, the defendant is discharged but the statute of limitations is tolled, and the prosecutor may restore the case to the docket at any time in the future. Id., 214.[24]

Although the entry of a nolle under our law does *not* toll the statute of limitations; see *State* v. *Gaston*, 198 Conn. 435, 441, 503 A.2d 594 (1986); the legislature in 1973 and 1974 interpreted *Klopfer* to mandate that, following a nolle, a defendant cannot be kept under an indefinitely overhanging cloud of subsequent prosecution. The legislature perceived that, in order to render our law consistent with *Klopfer*, some additional procedural protection for a defendant whose case had been nolled was necessary, namely, the automatic erasure of records of the nolled case. Moreover, the legislative history; see footnote 23; demonstrates the legislature's belief and intention that, in order to comply with *Klopfer*, the erasure of records of nolled cases "by operation of law" pursuant to § 54-142a (c), following the requisite thirteen month period, should have the same practical effect as would the immediate erasure of records in dismissed cases pursuant to § 54-142a (a).[25] Thus, the history persuades us that, although the legislature used the term "nolle" in subsection (c) of § 54-

[24] In *Klopfer* v. *North Carolina*, supra, 386 U.S. 217, in which the defendant had been tried in North Carolina for criminal trespass, the jury failed to reach a verdict and, in March, 1964, the trial judge declared a mistrial and ordered the case continued. Thirteen months later, in April, 1965, the trial court, in response to the prosecutor's motion, continued the case to the next court term. Id., 218. Ultimately, in August, 1965, the prosecutor, over the defendant's objection, entered a nolle prosequi with leave, thus leaving the defendant at risk of future prosecution for an indefinite period of time. Id. The United States Supreme Court held that procedure, as applied to that case, violative of the defendant's right to a speedy trial. Id., 223.

[25] Similarly, records of cases that were dismissed prior to October 1, 1969, are deemed to have been erased "by operation of law" pursuant to § 54-142a (b).

142a, and although that term is ordinarily understood to have a technical meaning different from "dismissal," the legal and practical effect of a nolle under subsection (c) was intended by the legislature to be the same as the legal and practical effect of a dismissal under subsection (a) of § 54-142a.[26]

We conclude that § 54-142a (c) should be construed to give it the legal and practical effect intended by its drafters, as revealed by the legislative history. That being so, we can perceive no sound reason why that construction should not also carry over to the provisions of § 53-39a. Although § 53-39a does, as we indicated previously, use the term "dismissed" in its technical sense, § 54-142a (c) does not use the term "nolle" in that sense and, instead, uses it in a context that renders the provisions of § 54-142a (c) the functional equivalent of a dismissal. Thus, given that a dismissal and erasure pursuant to § 54-142a (a) or (b) would trigger the application of § 53-39a, we conclude that the same result should follow from the erasure of records of a nolled case under § 54-142a (c). This construction is consistent with the general purpose of § 53-39a, namely, to indemnify police officers against whom criminal charges have been made but not prosecuted or of which the officer has been found not guilty.

This construction of § 54-142a (c) is also consistent with much of the general jurisprudence of nolles and dismissals. Although they have some doctrinal and procedural differences; see footnote 9; in some legal respects they are treated as fungible. See, e.g., *State* v. *Gaston*, supra, 198 Conn. 440 (nolle and dismissal

---

[26] The additional legislative purpose behind § 54-142a as a whole is to ease the administrative burden on the courts. This purpose partially explains the absence of the use of the term "dismissal" in subsection (c). A dismissal traditionally requires action by the court; therefore, the use of such a term might have implied the necessity of court action, which would be contrary to this administrative purpose.

treated same for purposes of speedy trial analysis); *See* v. *Gosselin,* 133 Conn. 158, 160–61, 48 A.2d 560 (1946) (nolle and dismissal treated same for purposes of subsequent action for malicious prosecution).

In addition, we note that between 1973, when § 53-39a was first enacted, and October 1, 1987, there were two forms of dismissal under Practice Book § 819: with and without prejudice.[27] A dismissal without prejudice did not prevent the state "from subsequently charging the defendant with the same crime and [the accused was placed] in essentially the same position as he or she would have been had a nolle entered." *State* v. *Talton,* 209 Conn. 133, 141, 547 A.2d 543 (1988); *State* v. *Lenczyk,* 11 Conn. App. 224, 225–26 n.1, 526 A.2d 554 (1987). Thus, when the legislature used the term "dismissed" in enacting § 53-39a in 1973, it must be presumed to have understood that a dismissal without prejudice—the functional equivalent of a nolle—would trigger the compensatory provisions of § 53-39a. Accordingly, in the absence of clear evidence that it intended to do so, the legislature should not be deemed to have excluded from indemnification functional equivalents of a dismissal without prejudice, such as a nolle and erasure pursuant to § 54-142a (c). In fact, even today, long after the repeal of Practice Book § 819, a case may be dismissed under Practice Book § 815[28] for

---

[27] Practice Book § 819, which was in effect from 1963 to October 1, 1987, provided: "If the judicial authority grants a motion to dismiss, he shall specify whether the dismissal is with or without prejudice. If the dismissal is with prejudice, the defendant shall be released, and the prosecuting authority may, where he is entitled by law, appeal the dismissal in the same manner and to the same effect as appeals from final judgments in criminal prosecutions. If the dismissal is without prejudice, the defendant shall be released, but the dismissal shall not be a bar to further prosecution for the same offense or offenses." That section was repealed effective October 1, 1987.

[28] Practice Book § 815 provides: "The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the information:

"(1) Defects in the institution of the prosecution including any grand jury proceedings;

many reasons that would leave the defendant in an essentially equivalent position as if the case had been nolled. Common sense suggests that such an equivalency must carry over to the application of § 53-39a.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the summary judgment in favor of the defendant, and to remand the case to the trial court for further proceedings according to law.

In this opinion the other justices concurred.

"(2) Defects in the information including failure to charge an offense;
"(3) Statute of limitations;
"(4) Absence of jurisdiction of the court over the defendant or the subject matter;
"(5) Insufficiency of evidence or cause to justify the bringing or continuing of such information or the placing of the defendant on trial;
"(6) Previous prosecution barring the present prosecution;
"(7) Claim that the defendant has been denied a speedy trial;
"(8) Claim that the law defining the offense charged is unconstitutional or otherwise invalid; or
"(9) Any other grounds."