ALFRED C. BERGNER, ADMINISTRATOR (ESTATE OF
HELEN L. BERGNER) *v.* STATE OF CONNECTICUT

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued January 2—decided February 25, 1957

*William S. Zeman,* with whom was *Morgan M. Kline,* for the appellant (plaintiff).

*Thomas J. Conroy,* assistant attorney general, with whom, on the brief, were *John J. Bracken,* attorney general, and *Raymond J. Cannon,* assistant attorney general, for the appellee (defendant).

BALDWIN, J. The complaint in this action alleges that the plaintiff's decedent, while walking along a corridor in a building of the Norwich State Hospital on February 14, 1954, fell because of a slippery floor and sustained injuries which resulted in her death. It charges the defendant state of Connecticut, which maintained the hospital, and its servants and agents, with negligence and with creating and maintaining a nuisance. Consent to the bringing of this action against the state was given by a special act of the General Assembly at its 1955 regular session. 27 Spec. Laws 277, No. 346. The defendant filed an answer denying the allegations of negligence and nuisance. It also filed two special defenses, the first alleging contributory negligence and the second that the defendant in maintaining the hospital "was acting in the exercise of a governmental duty, and, therefore, governmental immunity applies." The

plaintiff demurred to the second special defense on the ground that the defendant, by enacting the special act authorizing the bringing of this action, had waived the defense of governmental immunity. The trial court overruled the demurrer and the plaintiff has appealed from the judgment rendered when the plaintiff refused to plead further. The ground of the demurrer raises the question whether the state, in this action authorized by statute, can raise the defense of governmental immunity.

The special act reads as follows: "Alfred C. Bergner, administrator of the estate of Helen Louise Bergner, is authorized to bring suit against the state on his claim for damages arising out of accidental injuries suffered by Helen Louise Bergner on February 14, 1954, at Norwich State Hospital, and subsequent death. Such action may be brought to the superior court for Hartford county on or before January 1, 1956. Said action shall be tried to the court without a jury and no interest or costs shall be included in any judgment against the state, and all legal defenses are reserved to the state." 27 Spec. Laws 277, No. 346.

The basic claim of the plaintiff is that this legislation not only gives a right of suit but also surrenders the defense of governmental immunity from liability. The defendant claims that only a right of suit is conceded. It is a well-established rule of the common law that a state cannot be sued without its consent. *Somers* v. *Hill,* 143 Conn. 476, 479, 123 A.2d 468, and cases cited. This rule has its origin in the ancient common law. The king, being the fountainhead of justice, could not be sued in his own courts. 1 Pollock & Maitland, History of English Law (2d Ed.) pp. 514-518. However, the king as the source of justice could not well refuse to redress the wrongs done to

his subjects. Consequently, a procedure was developed whereby the subject, by bringing a petition to the king and securing his accession, could litigate his claim in the courts. 9 Holdsworth, History of English Law, p. 8. While a petition lay for a wide variety of actions, mostly proprietary in nature, it did not lie for torts because of the hoary maxim "The king can do no wrong." Street, Governmental Liability, p. 2; *Feather* v. *The Queen,* 6 Best & Sm. 257, 295, 122 Eng. Rep. 1191. Why legal principles spawned in feudal England should be the common law of this republic we cannot tell. Suffice it to say that they are. Justice Holmes wrote: "A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." *Kawananakoa* v. *Polyblank,* 205 U.S. 349, 353, 27 S. Ct. 526, 51 L. Ed. 834; see *The Western Maid,* 257 U.S. 419, 432, 42 S. Ct. 159, 66 L. Ed. 299; *United States* v. *Lee,* 106 U.S. 196, 206, 1 S. Ct. 240, 27 L. Ed. 171; *Briggs* v. *Light-Boats,* 93 Mass. (11 Allen) 157, 162. This states the basis for the adaptation of the principles of governmental immunity to the American concept of government.

From this history we see that there apparently were two principles at the foundation of the proposition that the king, and subsequently the state, could not be sued without consent. One was sovereign immunity from suit and the other was sovereign immunity from liability. The latter has been applied to municipal corporations, which, as creatures of the state, are not liable under the doctrine of respondeat superior for the negligence of their officers, servants and agents in the performance of governmental functions. *Hewison* v. *New Haven,* 37 Conn.

475, 483; *Jewett* v. *New Haven,* 38 Conn. 368, 386; *Judson* v. *Winsted,* 80 Conn. 384, 386, 68 A. 999; *Pope* v. *New Haven,* 91 Conn. 79, 80, 99 A. 51; 18 McQuillin, Municipal Corporations (3d Ed.) p. 133; 4 Dillon, Municipal Corporations (5th Ed.) § 1655. These cases are distinguishable from those wherein a municipal corporation has been held liable for its positive act in creating a nuisance. *Hoffman* v. *Bristol,* 113 Conn. 386, 389, 155 A. 499; *Prifty* v. *Waterbury,* 133 Conn. 654, 657, 54 A.2d 260; see *Beckwith* v. *Stratford,* 129 Conn. 506, 29 A.2d 775. The distinction between immunity from suit and immunity from liability appears to have been recognized in *State* v. *Kilburn,* 81 Conn. 9, 11, 69 A. 1028, and *State* v. *Anderson,* 82 Conn. 392, 394, 73 A. 751. The great majority of the courts of other jurisdictions make this same distinction and hold that a statute granting consent to sue the state merely provides a remedy to enforce such liability as the general law recognizes. *State* v. *Miser,* 50 Ariz. 244, 257, 72 P.2d 408; *Manion* v. *State Highway Commissioner,* 303 Mich. 1, 19, 5 N.W.2d 527; *Minty* v. *Board of State Auditors,* 336 Mich. 370, 394, 58 N.W.2d 106; *Stewart* v. *State Highway Commission,* 166 Miss. 43, 48, 148 So. 218; *Ham* v. *Maine-New Hampshire Interstate Bridge Authority,* 92 N.H. 268, 271, 30 A.2d 1; *Smith* v. *State,* 227 N.Y. 405, 409, 125 N.E. 841; *Jack* v. *State,* 183 Okla. 375, 376, 82 P.2d 1033; *Campbell Building Co.* v. *State Road Commission,* 95 Utah 242, 252, 70 P.2d 857; *Columbia Steel Co.* v. *State,* 34 Wash. 2d 700, 712, 209 P.2d 482; 49 Am. Jur. 315, § 98; 81 C.J.S. 1307.

The question whether the principles of governmental immunity from suit and liability can best serve this and succeeding generations has become, by force of the long and firm establishment of these

principles as precedent, a matter for legislative, not judicial, determination. In *Adams* v. *New Haven,* 131 Conn. 552, 556, 41 A.2d 111, and *Lambert* v. *New Haven,* 129 Conn. 647, 649, 30 A.2d 923, we questioned the power of municipal officers to waive the defense of governmental immunity where the municipality was insured. The legislature has, in fact, long since begun to whittle this defense away. For example, there are the statutes allowing recovery against towns and the highway commissioner for defective roads and bridges; Cum. Sup. 1955, §§ 1180d, 1193d; and against the state for the negligent operation of its motor vehicles when they are insured against liability. General Statutes § 8297; see *McManus* v. *Jarvis,* 128 Conn. 707, 710, 22 A.2d 857; *Fitzpatrick* v. *Hill,* 18 Conn. Sup. 35, 36.

In the light of this history, we are called upon to decide whether the legislative enactment authorizing the present suit merely waived governmental immunity from suit, as claimed by the state, or whether, in spite of the language "all legal defenses are reserved to the state," it also waived immunity from liability, as claimed by the plaintiff. To resolve this issue, we must determine the legislative intent expressed by the statute. If the state's position is correct, the statute grants the plaintiff nothing. Counsel have cited no case, nor has our research discovered any, which holds that a state may be held liable for either negligence or nuisance in the absence of a statute permitting suit and imposing liability. It is a cardinal rule of statutory construction that courts must presume that legislatures do not intend to enact useless legislation. *Amsel* v. *Brooks,* 141 Conn. 288, 295, 106 A.2d 152. It would be utterly useless and meaningless to permit a suit which could not end otherwise than in a judgment for the defendant.

That the established law would work this result must have been obvious to the General Assembly from the mere fact that it was asked to pass this special act to obviate what would, without remedial legislation, be inevitable.

In construing a statute, courts are often required to look beyond the literal meaning of the words used in it to its history, to the language used in all of its parts, and to its purpose and policy. *Giammattei* v. *Egan,* 135 Conn. 666, 668, 68 A.2d 129. If the clause "all legal defenses are reserved to the state" is to be taken literally, the statute is ineffective and futile. If the clause, read in connection with the entire wording of the statute and in the light of its legislative history as well as of the pre-existing law, is construed as expressing an intent that the defense of governmental immunity should not be included among the defenses reserved to the state, the statute becomes meaningful and effective. When one construction thwarts the purpose of an enactment and another does not, the latter construction, where possible, is preferred. *Bridgeport* v. *Stratford,* 142 Conn. 634, 644, 116 A.2d 508; *Northeastern Gas Transmission Co.* v. *Collins,* 138 Conn. 582, 592, 87 A.2d 139. Furthermore, a statute conferring a privilege or a right carries with it by implication everything necessary to ensure the realization of that privilege or to establish that right in order to make it effectual and complete. *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 210, 91 A.2d 773. Besides, that the clause "all legal defenses are reserved to the state" was not intended to be taken literally is obvious for another reason. The special act authorizing this suit was passed by the senate on May 23, 1955, and by the house on May 26, 1955. Conn. S. Jour., 1955 Sess., p. 1051; Conn. H. Jour., 1955 Sess.,

pp. 1070, 1072. The injuries having been sustained, as stated in the act, on February 14, 1954, the action, at least in so far as it was based on negligence, was already barred by the Statute of Limitations. General Statutes § 8324. The act, however, provided that suit could be brought on or before January 1, 1956. The legislature could therefore not have intended the phrase "all legal defenses" to include the defense of the Statute of Limitations. The defenses reserved were intended to include only those not inconsistent with the purpose of the act. We conclude that the state cannot interpose the defense of governmental immunity and that the demurrer should have been sustained.

There is error, the judgment is set aside and the case is remanded with direction to sustain the demurrer.

In this opinion the other judges concurred.