ALEX MARTINEZ *v.* DEPARTMENT OF PUBLIC
SAFETY, DIVISION OF STATE POLICE
(SC 16488)

Norcott, Palmer, Vertefeuille, Zarella and Wollenberg, Js.

Argued September 24—officially released December 4, 2001*

---

*A motion for reconsideration en banc was granted April 1, 2002. This opinion has been superseded by *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 818 A.2d 758 (2003).

*Robert F. Vacchelli*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellant (defendant).

*C. Christian Young*, with whom was *John R. Gulash, Jr.*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether the trial court properly denied the defendant's motion to dismiss the plaintiff's claim for indemnification. The plaintiff, Alex Martinez, a former Connecticut state trooper, was prosecuted for a criminal offense arising out of an incident allegedly committed during the course of his duties. He was acquitted of all charges and sought indemnification pursuant to General Statutes § 53-39a.[1] The defendant, the department of public safety, division of state police, the plaintiff's employer, refused to indemnify him. As a result, the plaintiff brought this action in the Superior Court, claiming his statutory right to indemnification. The defendant filed a motion to dismiss the plaintiff's action, claiming that the state is protected from suit by the doctrine of sovereign immunity and that the Superior Court, therefore, lacked jurisdiction over the plaintiff's claim. The trial

---

[1] General Statutes § 53-39a provides: "Whenever, in any prosecution of an officer of the Division of State Police within the Department of Public Safety, or a member of the Office of State Capitol Police or any person appointed under section 29-18 as a special policeman for the State Capitol building and grounds, the Legislative Office Building and parking garage and related structures and facilities, and other areas under the supervision and control of the Joint Committee on Legislative Management, or a local police department for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer found not guilty, such officer shall be indemnified by his employing governmental unit for economic loss sustained by him as a result of such prosecution, including the payment of any legal fees necessarily incurred."

court, *Rush, J.*, denied the defendant's motion to dismiss and the defendant appealed to the Appellate Court. Thereafter, we transferred the appeal to this court pursuant to Practice Book § 65-1. We affirm the decision of the trial court.

The following facts are undisputed. On or about March 18, 1998, while the plaintiff was on duty as a state trooper, he was involved in an incident with a motorist and subsequently was charged with violating General Statutes §§ 53a-83a[2] and 53a-192.[3] At a jury trial, the prosecution alleged that the plaintiff threatened a disabled female motorist with a ticket unless she consented to have sex with him. The plaintiff was acquitted of all charges. *State v. Martinez*, Superior Court, judicial district of Fairfield, Docket No. CR98-139129 (November 23, 1999). Thereafter, the plaintiff, pursuant to § 53-39a, requested indemnification from the defendant for the legal expenses and costs he necessarily had incurred in his defense. The defendant denied the plaintiff's request. The plaintiff then filed this action.

[2] General Statutes § 53a-83a (a) provides: "A person is guilty of patronizing a prostitute from a motor vehicle when he, while occupying a motor vehicle: (1) Pursuant to a prior understanding, pays a fee to another person as compensation for such person or a third person having engaged in sexual conduct with him; or (2) pays or agrees to pay a fee to another person pursuant to an understanding that in return therefor such person or a third person will engage in sexual conduct with him; or (3) solicits or requests another person to engage in sexual conduct with him in return for a fee; or (4) engages in sexual conduct for which a fee was paid or agreed to be paid."

[3] General Statutes § 53a-192 (a) provides in relevant part: "A person is guilty of coercion when he compels or induces another person to engage in conduct which such other person has a legal right to abstain from engaging in, or to abstain from engaging in conduct in which such other person has a legal right to engage, by means of instilling in such other person a fear that, if the demand is not complied with, the actor or another will . . . (4) take or withhold action as an official, or cause an official to take or withhold action."

The defendant argues that the state is protected from both suit and liability by the doctrine of sovereign immunity. "It is well established law that the state is immune from suit unless it consents to be sued by appropriate legislation waiving sovereign immunity in certain prescribed cases. *Baker* v. *Ives*, 162 Conn. 295, 298, 294 A.2d 290 (1972); *Murphy* v. *Ives*, 151 Conn. 259, 262–63, 196 A.2d 596 (1963)." *Duguay* v. *Hopkins*, 191 Conn. 222, 227, 464 A.2d 45 (1983). The plaintiff claims that under § 53-39a, this case presents one of the "certain prescribed cases" for which the state has waived its sovereign immunity for purposes of indemnification. We agree.

The trial court interpreted § 53-39a "as a waiver of sovereign immunity not only as to liability, but as to suit as well." Accordingly, the court properly concluded that it did have subject matter jurisdiction over the plaintiff's claim and denied the defendant's motion to dismiss.

The applicable standard of review is well established. "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) *Antinerella* v. *Rioux*, 229 Conn. 479, 489, 642 A.2d 699 (1994). "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Doe* v. *Roe*, 246 Conn. 652, 660, 717 A.2d 706 (1998).

"The question whether the principles of governmental immunity from suit and liability are waived is a matter for legislative, not judicial, determination. . . . The state's sovereign right not to be sued may be waived

by the legislature, provided clear intention to that effect is disclosed by the use of express terms or by force of a necessary implication." (Citations omitted; internal quotation marks omitted.) *Duguay* v. *Hopkins*, supra, 191 Conn. 228. "To determine the legislative intent expressed in a statute, we look to its wording and to its history and basic policy as disclosed by preexisting legislation and the circumstances which brought about its enactment." Id.[4] Thus, to determine whether the state has waived its immunity from suit and liability, we first turn to the relevant statutory language itself.

"Section 53-39a, which was originally enacted in 1973; see Public Acts 1973, No. 73-627; authorizes indemnification for economic loss, including legal fees, incurred by officers of . . . police departments who are prosecuted for crimes allegedly committed by them in the course of their duties when the charges against them are dismissed or they are found not guilty. See, e.g., *Link* v. *Shelton*, 186 Conn. 623, 627, 443 A.2d 902 (1982). The general purpose of the statute is to permit police officers to recoup the necessary expenses that they have incurred in defending themselves against unwarranted criminal charges arising out of their conduct in the course of their employment. Id., 628–29." *Cislo* v. *Shelton*, 240 Conn. 590, 598, 692 A.2d 1255 (1997). Section 53-39a explicitly provides that "[w]henever, in any prosecution of an officer of the [d]ivision of [s]tate [p]olice within the [d]epartment of [p]ublic [s]afety . . . for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer found not guilty, such officer shall be indemnified by his employing governmental unit for

---

[4] The legislative history of § 53-39a pertinent to the claim raised by the plaintiff does not itself provide us with any insight as to the intention of the legislature in enacting the statute. The legislative history is limited to the public act's appearance on the consent calendar. See Public Acts 1973, No. 73-627.

economic loss sustained by him as a result of such prosecution . . . ." Applying the plain language of the statute to the facts of the present case, the plaintiff falls within the rubric of "such officer" who "*shall* be indemnified" by the defendant, "his employing governmental unit . . . ." (Emphasis added.) "As we have often stated, [d]efinitive words, such as must or shall, ordinarily express legislative mandates of a nondirectory nature. *State* v. *Metz*, 230 Conn. 400, 410, 645 A.2d 965 (1994); *Lo Sacco* v. *Young*, 210 Conn. 503, 507, 555 A.2d 986 (1989) . . . . *State* v. *Pare*, 253 Conn. 611, 623, 755 A.2d 180 (2000)." (Internal quotation marks omitted.) *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 270–71, 777 A.2d 645 (2001).

"The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words." (Internal quotation marks omitted.) Id., 284–85. Here, § 53-39a imposes the substantive duty upon the state employing unit to indemnify a state employee who fulfills the statutory requirements. The use of the word "shall," therefore, relates to the essence of the statute itself and necessarily imposes a mandatory directive upon the state.

We conclude that § 53-39a unambiguously provides for the indemnification of state troopers in these particular factual circumstances. Thus, the state clearly has waived immunity from liability. It is now necessary to

determine whether the state also has waived liability from suit.

The defendant argues that § 53-39a does not waive or abrogate the state's sovereign immunity from suit and that the defendant's claim is completely within the jurisdiction of the claims commissioner, pursuant to General Statutes § 4-165.[5] The claims commissioner is granted discretionary duties by statute. Pursuant to General Statutes § 4-158, the claims commissioner has sole discretion to pay or reject any claim under $7500.[6] For any claim in excess of that amount, the claims commissioner "shall make his recommendations to the General Assembly for the payment or rejection of [such claim]." General Statutes § 4-159.[7] The General Assembly, as the final arbiter, is then free to accept, reject or alter any recommendation from the claims commissioner.

The defendant, however, by arguing that § 4-165 establishes the claims commissioner's exclusive juris-

---

[5] General Statutes § 4-165 provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter. . . ."

[6] General Statutes § 4-158 (a) provides in relevant part: "The Claims Commissioner may approve immediate payment of just claims not exceeding seven thousand five hundred dollars. . . ."

[7] General Statutes § 4-159 provides in relevant part: "After hearing, the Claims Commissioner shall make his recommendations to the General Assembly for the payment or rejection of amounts exceeding seven thousand five hundred dollars. . . . [T]he Claims Commissioner shall submit such recommendations to the General Assembly, together with a copy of his findings and of the hearing record of each claim so reported. The General Assembly may (1) accept or alter any such recommendation or (2) reject any such recommendation and grant or deny the claimant permission to sue the state. The General Assembly may grant the claimant permission to sue the state under the provisions of this section when the General Assembly deems it just and equitable and believes the claim to present an issue of law or fact under which the state, were it a private person, could be liable."

diction over the present case, reads § 4-165 in isolation. Chapter 53 of the General Statutes, of which § 4-165 is a part, establishes the general process by which an individual may bring claims against the state. Section 4-165 specifically provides in part that "[a]ny person having a complaint for such damage or injury shall present it as a claim against the state *under the provisions of this chapter. . . .*" (Emphasis added.) The chapter's provisions include General Statutes § 4-142, which carves out the exceptions to the jurisdiction of the claims commissioner: "There shall be a Claims Commissioner who shall hear and determine all claims against the state *except . . .* claims upon which suit otherwise is authorized by law . . . ." (Emphasis added.) General Statutes § 4-142 (2).[8] As we already have established, § 53-39a authorizes the liability of the state for the indemnification of a state trooper from his or her governmental employing unit. It falls, therefore, within the exception to § 4-165 carved out by § 4-142. Consequently, the defendant's reading of § 4-165 would frustrate the purpose of § 53-39a.

Where, as here, the legislature expressly has established an obligation on the part of the state to its employee, the state is liable to that employee for the fulfillment of that obligation and, therefore, has waived the state's immunity as to suit in order to achieve that end. We considered the converse of this situation in an earlier case. In *Bergner* v. *State*, 144 Conn. 282, 284, 130 A.2d 293 (1957), the General Assembly had passed legislation authorizing the plaintiff to sue the state for damages caused by an accident in a state facility. The state argued that the special act waived only the state's immunity from suit, not from liability. Id. We disagreed,

---

[8] The plaintiff did file a notice of claim with the claims commissioner on August 24, 2000. On February 5, 2001, the plaintiff also filed a motion for a stay of the proceedings before the claims commissioner pending the outcome of this appeal. The latter motion was denied on February 7, 2001.

concluding that an act allowing suit but prohibiting liability would be useless. Id., 287. "It is a cardinal rule of statutory construction that courts must presume that legislatures do not intend to enact useless legislation. . . . It would be utterly useless and meaningless to permit a suit which could not end otherwise than in a judgment for the defendant." (Citation omitted.) Id. A statute must be read as imbued with purpose and with the means necessary to achieve that purpose. "[A] statute conferring a privilege or a right carries with it by implication everything necessary to ensure the realization of that privilege or to establish that right in order to make it effectual and complete." (Internal quotation marks omitted.) *Redevelopment Agency* v. *Norwalk Aluminum Foundry Corp.*, 155 Conn. 397, 405, 233 A.2d 1 (1967). Here, the language of § 53-39a is explicit and its directive is mandatory. If the state were not liable to be sued, the plaintiff's only means of recourse for indemnification would be through the claims commission. As we have determined, the discretion afforded the claims commissioner to deny or accept the plaintiff's claim for indemnification, however, is at odds with both the mandatory indemnification established by § 53-39a and the exception carved out by § 4-142.[9] Accordingly, in keeping with our interpretation of the statutory scheme at issue here, we conclude that the legislature implicitly has provided for the waiver of the state's immunity to suit.

The defendant also points out that this court previously has held that § 53-39a distinguishes and abro-

---

[9] At oral argument before this court, the defendant's counsel stated that the plaintiff's remedy could include an appeal of the claims commissioner's denial of a claim to the legislature, asking, in effect, for the legislature to either grant the plaintiff the right to sue the claims commission, or to order the claims commissioner to pay the plaintiff, thereby overriding the statutorily granted discretion afforded the claims commissioner. See footnote 7 of this opinion. We conclude that this remedial scheme is inconsistent with the legislative intent expressed by §§ 4-142 and 53-39a.

gates governmental as opposed to sovereign immunity. This observation, though accurate, is inapposite. It is true that the earlier cases we have considered involved factual scenarios concerning individuals employed by municipalities.[10] See *Cislo* v. *Shelton*, supra, 240 Conn. 598 ("[§] 53-39a . . . authorizes indemnification for economic loss, including legal fees, incurred by officers of *local* police departments who are prosecuted for crimes allegedly committed by them in the course of their duties when the charges against them are dismissed or they are found not guilty" [citation omitted; emphasis added]); *Rawling* v. *New Haven*, 206 Conn. 100, 104–105, 537 A.2d 439 (1988) ("[§ 53-39a] affords a police officer a right of indemnity . . . [and is a statute] that abrogate[s] or modif[ies] *governmental* immunity" [citations omitted; emphasis added; internal quotation marks omitted]); *Link* v. *Shelton*, supra, 186 Conn. 627 ("§ 53-39a authorizes indemnification for legal fees incurred by an officer of a *local* police department as a result of prosecution for a crime allegedly committed by him in the course of his duty where he is found not guilty of the crime charged" [emphasis added; internal quotation marks omitted]).

Although our prior case law has only considered circumstances involving the indemnification of municipal employees, this fact does not affect our conclusion regarding this case.[11] The explicit language of § 53-39a

---

[10] In *Cislo*, the plaintiff was a police officer employed by the city of Shelton, as was the plaintiff in *Link*. In *Rawling* v. *New Haven*, 206 Conn. 100, 537 A.2d 439 (1988), the plaintiff was a New Haven police officer.

[11] We note that the past usage of the terms "sovereign" and "governmental" immunity has been, at times, somewhat inconsistent and, consequently, confusing. See, e.g., *Duguay* v. *Hopkins*, supra, 191 Conn. 228 (where liability of state commissioner of mental retardation was considered, court stated "[t]he question whether the principles of governmental immunity from suit and liability are waived is a matter for legislative, not judicial, determination"). In *Duguay*, the term "governmental" is used interchangeably with "sovereign." See also *White* v. *Burns*, 213 Conn. 307, 312, 567 A.2d 1195 (1990) ("The state and its municipalities enjoy governmental immunity, in certain circumstances, from liability for their tortious acts. . . . The state

specifically includes, in its first sentence, "an officer of the [d]ivision of the [s]tate [p]olice" in the class of employees entitled to indemnification from the governmental employing unit when the statutory requirements are satisfied. In this case, the employing unit is the department of public safety, division of state police.

The defendant finally argues that the trial court's memorandum of decision improperly construes § 53-39a to confer upon state troopers an automatic right to indemnification if they are merely found not guilty of criminal charges. The defendant correctly points out that the second prong of the statutory prerequisite for indemnification is that the alleged crime must have been committed in the course of the state trooper's duty. We conclude that the defendant's reading misconstrues the trial court's memorandum. The trial court clearly asserted the two requirements necessary for indemnification, quoting our decision in *Cislo* v. *Shelton*, supra, 240 Conn. 598. " 'The general purpose of [§ 53-39a] is to permit police officers to recoup the necessary expenses that they have incurred in defending themselves against unwarranted criminal charges arising out of their conduct in the course of

legislature, however, possesses the authority to abrogate any governmental immunity by statute that the common law gives to the state and municipalities." [Citation omitted.]). Elsewhere in our jurisprudence, the distinction between the two terms is clear. See, e.g., *Ryszkiewicz* v. *New Britain*, 193 Conn. 589, 593, 479 A.2d 793 (1984) ("[t]he state legislature possesses the authority to abrogate any governmental immunity that the common law gives to municipalities"); *Murphy* v. *Ives*, supra, 151 Conn. 264 ("A suit against a municipality is not a suit against a sovereign. Towns have no sovereign immunity, and are capable of suing and being sued . . . in any action. . . . Municipalities do, in certain circumstances, have a governmental immunity from liability." [Citations omitted; internal quotation marks omitted.]). We note that the use of "sovereign immunity" has always referred to the *sovereignty of the state*; "governmental immunity," however, has been used both in its limited form to refer only to the immunity enjoyed by municipalities — and thereby distinguished from the immunity of the state — and as synonymous with or encompassing "sovereign" or state immunity. None of these usages alters our analysis in the present case.

their employment.' . . . *Given this analysis*, the court concludes that the statute is mandatory, and that a right to indemnification is automatic upon a finding of not guilty." (Citation omitted; emphasis added.)

Before us is the appeal of the trial court's denial of the defendant's motion to dismiss the plaintiff's claim for indemnification. We conclude that the trial court properly concluded that it had subject matter jurisdiction of the plaintiff's claim and that the defendant's motion to dismiss properly was denied.

The decision of the trial court is affirmed.

In this opinion the other justices concurred.