ALEX MARTINEZ *v.* DEPARTMENT OF
PUBLIC SAFETY
(SC 16488)

Sullivan, C. J., and Borden, Norcott, Palmer, Vertefeuille, Zarella and
Wollenberg, Js.

Argued October 23, 2002—officially released April 8, 2003

*Gregory T. D'Auria*, associate attorney general, with whom were *Robert F. Vacchelli*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Jane R. Rosenberg*, assistant attorney general, for the appellant (defendant).

*C. Christian Young*, with whom, on the brief, was *John R. Gulash, Jr.*, for the appellee (plaintiff).

*Leonard A. McDermott* filed a brief for the Connecticut State Police Union as amicus curiae.

*Opinion*

VERTEFEUILLE, J. This case involves an action for indemnification brought by the plaintiff, Alex Martinez, a former state trooper, against the defendant, the state department of public safety,[1] seeking reimbursement for expenses and costs he had incurred in defending himself against criminal charges that arose out of his alleged conduct during the course of duty. The dispositive issue in this en banc rehearing of the defendant's appeal is whether the plaintiff's claim is barred by the doctrine of sovereign immunity. More specifically, we

---

[1] The department of public safety is responsible for overseeing the state police. General Statutes § 29-1b.

must determine whether General Statutes § 53-39a[2] constitutes a waiver of sovereign immunity that permits the plaintiff to bring this action against the defendant.[3] We conclude that, although § 53-39a waives immunity from liability, it does not waive immunity from suit. Thus, the trial court lacked subject matter jurisdiction to hear this case. Accordingly, we reverse the decision of the trial court denying the defendant's motion to dismiss this action on the ground of sovereign immunity.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. In March, 1998, while on duty as a state trooper, the plaintiff was summoned by a roadside motorist. The plaintiff stopped to investigate and ultimately issued the female motorist a citation for a motor vehicle infraction. The motorist subsequently filed a complaint against the plaintiff for allegedly threatening her with other traffic

---

[2] General Statutes § 53-39a provides: "Whenever, in any prosecution of an officer of the Division of State Police within the Department of Public Safety, or a member of the Office of State Capitol Police or any person appointed under section 29-18 as a special policeman for the State Capitol building and grounds, the Legislative Office Building and parking garage and related structures and facilities, and other areas under the supervision and control of the Joint Committee on Legislative Management, or a local police department for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer found not guilty, such officer shall be indemnified by his employing governmental unit for economic loss sustained by him as a result of such prosecution, including the payment of any legal fees necessarily incurred."

[3] The defendant raised another issue on appeal: whether the trial court properly concluded that the plaintiff had an automatic right to indemnification under § 53-39a, where, although the court found that the plaintiff had been acquitted of the underlying criminal charges, the court failed to determine whether the events giving rise to the criminal charges occurred in the course of the plaintiff's duties. We do not address this issue because we conclude that the plaintiff's action is barred by the doctrine of sovereign immunity. Both parties also briefed another issue at our request, namely, the significance of the reference to both municipal and state police officers in § 53-39a. This issue will be discussed as part of the analysis in part II of this opinion.

charges if she did not submit to his sexual demands. As a result of the motorist's complaint, the plaintiff was charged with coercion and patronizing a prostitute. After a trial, the plaintiff was acquitted of these criminal charges. *State* v. *Martinez*, Superior Court, judicial district of Fairfield, Docket No. CR98-139129 (November 23, 1999). He incurred legal fees for his defense totaling $93,143.30. The plaintiff, thereafter, submitted to the defendant a claim for indemnification for his legal expenses pursuant to § 53-39a. The defendant refused to indemnify the plaintiff, and, as a result, the plaintiff initiated the underlying action that gave rise to this appeal.[4]

In the trial court, the defendant moved to dismiss the plaintiff's action based on the doctrine of sovereign immunity. The trial court denied the defendant's motion to dismiss, concluding that pursuant to § 53-39a, the state had waived sovereign immunity from liability and from suit. The defendant appealed from the trial court's decision to the Appellate Court.[5] We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. The appeal originally was argued before a panel of five members of this court on September 24, 2001, which affirmed the trial court's denial of the defendant's motion to dismiss. *Martinez* v. *Dept. of Public Safety*, 258 Conn. 680, 680–82, 784 A.2d 347 (2001). Thereafter, we granted the defendant's motion for reargument en banc and reconsideration of

[4] The plaintiff also later filed the same claim for indemnification with the claims commissioner. That claim was dismissed on November 26, 2001, because the plaintiff failed to comply with discovery requests.

[5] "The general rule is that the denial of a motion to dismiss is an interlocutory ruling and, therefore, is not a final judgment for purposes of appeal." *Shay* v. *Rossi*, 253 Conn. 134, 164, 749 A.2d 1147 (2000). In *Shay*, however, we concluded that the denial of a motion to dismiss based on a colorable claim of sovereign immunity is an immediately appealable final judgment because "the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 164–65.

the same issue, and ordered the parties to file supplemental briefs. We now reverse the decision of the trial court.[6]

## I

We begin with a brief overview of the doctrine of sovereign immunity as applied in this state. In *Bergner* v. *State*, 144 Conn. 282, 284–85, 130 A.2d 293 (1957), this court detailed the historical development of the doctrine of sovereign immunity: "It is a well-established rule of the common law that a state cannot be sued without its consent. *Somers* v. *Hill*, 143 Conn. 476, 479, 123 A.2d 468 [1956], and cases cited. This rule has its origin in the ancient common law. The king, being the fountainhead of justice, could not be sued in his own courts. 1 Pollock & Maitland, History of English Law (2d Ed.) pp. 514–518. However, the king as the source of justice could not well refuse to redress the wrongs done to his subjects. . . . While a petition lay [against the king] for a wide variety of actions, mostly proprietary in nature, it did not lie for torts because of the hoary maxim 'The king can do no wrong.' Street, Governmental Liability, p. 2; *Feather* v. *The Queen*, 6 Best & Sm. 257, 295, 122 Eng. Rep. 1191. . . . From this history we see that there apparently were two principles at the foundation of the proposition that the king, and subsequently the state, could not be sued without consent. One was sovereign immunity from suit and the other was sovereign immunity from liability." (Citations omitted.)

The underpinnings of the doctrine of sovereign immunity have changed to fit modern legal needs. "A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as

---

[6] Accordingly, this opinion supersedes our previous decision in *Martinez* v. *Dept. of Public Safety*, supra, 258 Conn. 680, in its entirety.

against the authority that makes the law on which the right depends. . . . The practical and logical basis of the doctrine is today recognized to rest on this principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds, and property." (Citations omitted; internal quotation marks omitted.) *Horton* v. *Meskill*, 172 Conn. 615, 623–24, 376 A.2d 359 (1977). This court continually has reaffirmed the viability of the doctrine of sovereign immunity. See, e.g., *Shay* v. *Rossi*, 253 Conn. 134, 165, 749 A.2d 1147 (2000); *Pamela B.* v. *Ment*, 244 Conn. 296, 328, 709 A.2d 1089 (1998); *Struckman* v. *Burns*, 205 Conn. 542, 558–59, 534 A.2d 888 (1987); *Horton* v. *Meskill*, supra, 623–25.

In *Bergner* v. *State*, supra, 144 Conn. 285, this court recognized the distinction between immunity from suit and immunity from liability. "There is, of course, a distinction between sovereign immunity from suit and sovereign immunity from liability. Legislative waiver of a state's suit immunity merely establishes a remedy by which a claimant may enforce a valid claim against the state and subjects the state to the jurisdiction of the court. By waiving its immunity from liability, however, the state concedes responsibility for wrongs attributable to it and accepts liability in favor of a claimant." *Greenfield Construction Co.* v. *Dept. of State Highways*, 402 Mich. 172, 193, 261 N.W.2d 718 (1978).

The court in *Bergner* concluded that a statute that explicitly waived immunity from suit should be construed as implicitly waiving immunity from liability, because, otherwise, the waiver of suit would be meaningless. *Bergner* v. *State*, supra, 144 Conn. 287. *Bergner* involved an action for damages against the state for the death of the plaintiff's wife, who died as a result of a fall at Norwich State Hospital. Id., 283. The plaintiff

obtained permission to sue the state through a special act of the General Assembly enacted during its 1955 session. Id. The special act provided in relevant part that "Alfred C. Bergner . . . is authorized to bring suit against the state on his claim for damages arising out of accidental injuries suffered by Helen Louise Bergner . . . ." Id., 284; see 27 Spec. Acts 277, No. 346 (1955). The state filed a special defense of governmental immunity, claiming that the plaintiff had received a waiver from suit, but not from liability. *Bergner* v. *State*, supra, 284. This court reasoned that "[i]t would be utterly useless and meaningless to permit a suit which could not end otherwise than in a judgment for the defendant." Id., 287. Thus, the court concluded that the waiver of immunity from suit impliedly included a waiver of immunity from liability. See id., 288. We did not address, however, whether in the reverse situation—when there is an explicit waiver of immunity from liability but not a waiver of immunity from suit—a waiver of immunity from suit should be implied. In the present case, we are faced with that exact situation. We must decide whether the waiver of immunity from liability in § 53-39a impliedly includes a waiver of immunity from suit.

## II

The defendant in the present case claims that § 53-39a waives only immunity from liability and does not waive immunity from suit, and thus, that the plaintiff's action is barred by the doctrine of sovereign immunity. The plaintiff contends, in response, that § 53-39a waives immunity from both liability and suit and allows the plaintiff to bring his indemnification claim directly against the state in Superior Court. We agree with the defendant.

We begin by setting forth the standard of review that will govern our analysis of this issue. "[T]he doctrine

of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . *Antinerella* v. *Rioux*, 229 Conn. 479, 489, 642 A.2d 699 (1994). A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . *Doe* v. *Roe*, 246 Conn. 652, 660, 717 A.2d 706 (1998)." (Internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety*, supra, 258 Conn. 683.

The threshold question of whether § 53-39a allows suit against the state presents a question of statutory interpretation. "[W]e now restate the process by which we interpret statutes as follows: The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that

appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003).

"[B]ecause the state has permitted itself to be sued in certain circumstances, this court has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity. . . . Further, this court has stated that the state's sovereign right not to be sued without its consent is not to be diminished by statute, unless a clear intention to that effect on the part of the legislature is disclosed . . . ." (Citations omitted; internal quotation marks omitted.) *White* v. *Burns*, 213 Conn. 307, 312–13, 567 A.2d 1195 (1990).

Our analysis begins with the text of the statute at issue. Section 53-39a provides in relevant part that "[w]henever, in any prosecution of an officer of the Division of State Police within the Department of Public

Safety . . . for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer found not guilty, *such officer shall be indemnified by his employing governmental unit* for economic loss sustained by him as a result of such prosecution, including the payment of any legal fees necessarily incurred." (Emphasis added.) See footnote 2 of this opinion. By its express terms, the statute waives immunity from liability, and the defendant concedes that result. In waiving immunity from liability in § 53-39a, the legislature has conceded its responsibility and has accepted liability for claims such as the plaintiff's. *Greenfield Construction Co.* v. *Dept. of State Highways*, supra, 402 Mich. 193.

Section 53-39a contains no provision, however, allowing a suit, action, or proceeding against the state, and the statute therefore does not provide a waiver of the state's sovereign immunity from suit. As a result, no intent concerning a waiver of immunity from suit can be inferred from the statute itself. The plaintiff, moreover, has provided us with no legislative history, and we are aware of none, suggesting that the legislature intended to waive the state's immunity from suit when it enacted § 53-39a.[7] Given our obligation to construe § 53-39a strictly and to effect the least change in our law regarding sovereign immunity, we conclude that the legislature did not intend to waive immunity from suit in § 53-39a, and the plaintiff therefore is barred from bringing suit against the defendant to enforce the indemnity provision of the statute. Our conclusion is supported by well established principles of statutory construction.

---

[7] Section 53-39a, originating as Substitute Senate Bill No. 1545, was passed on the consent calendar in both chambers of the General Assembly. See, e.g., 16 S. Proc., Pt. 8, 1973 Sess., p. 3597a. As a result, there is no discussion on the floor of either chamber to guide this court in its interpretation of the statute.

First, in enacting § 53-39a, the legislature is presumed to have acted with knowledge of existing statutes and with an intent to create one consistent body of law. *Zachs* v. *Groppo*, 207 Conn. 683, 696, 542 A.2d 1145 (1988); *Doe* v. *Institute of Living, Inc.*, 175 Conn. 49, 62, 392 A.2d 491 (1978). "The General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them. And it is always presumed to have intended that effect which its action or non-action produces." (Internal quotation marks omitted.) *Knoll* v. *Kelley*, 142 Conn. 592, 595, 115 A.2d 678 (1995).

The legislature thus presumably enacted § 53-39a with knowledge of our statutes requiring any person with a claim against the state to file such claim with the state claims commissioner, seeking either payment or permission to sue the state. See General Statutes § 4-141 et seq. The claims commissioner has discretionary authority to pay or reject claims, to make recommendations to the legislature with regard to claims, and to authorize suit against the state. Specifically, the claims commissioner can approve the payment of any claim for less than $7500 in damages. General Statutes § 4-158 (a).[8] If the claim exceeds $7500, the claims commissioner must make a recommendation to the General Assembly suggesting payment or rejection, and the General Assembly may accept, reject or alter the claims commissioner's recommendation. General Statutes § 4-159.[9] The claims commissioner also may authorize suit

[8] General Statutes § 4-158 (a) provides in relevant part: "The Claims Commissioner may approve immediate payment of just claims not exceeding seven thousand five hundred dollars. . . ."

[9] General Statutes § 4-159 provides in relevant part: "After hearing, the Claims Commissioner shall make his recommendations to the General Assembly for the payment or rejection of amounts exceeding seven thousand five hundred dollars . . . . The General Assembly may (1) accept or alter any such recommendation or (2) reject any such recommendation and grant or deny the claimant permission to sue the state. . . ."

against the state in Superior Court. General Statutes § 4-160 (a).[10] We must infer that the legislature enacted § 53-39a knowing of these detailed statutory provisions that require claimants with indemnity claims against the state to enforce those claims through the claims commissioner.

Moreover, General Statutes § 4-142 establishes that all claims against the state must be filed with the claims commissioner unless specifically excepted. Section 4-142 provides in relevant part that "[t]here shall be a Claims Commissioner who shall hear and determine *all* claims against the state *except* . . . (2) claims upon which suit otherwise is authorized by law . . . ." (Emphasis added.) Section 53-39a does not authorize a claimant under the statute to file suit, and, therefore, the exception carved out in § 4-142 does not apply to claims under § 53-39a. The result is that the plaintiff's remedy for enforcement of his claim is with the claims commissioner.

We also look to the wording of similar statutes for assistance in interpreting § 53-39a. A review of analogous statutes demonstrates that when the legislature has intended to waive immunity from suit in other contexts, it clearly has expressed such an intent through explicit language in the text of the statute. See, e.g., General Statutes § 4-61 (a) (authorizing those who have entered into public works contract with state to "bring an action against the state"); General Statutes § 12-369 (stating that "[a]ctions may be brought against the state" for purpose of quieting title to property); General Statutes § 12-572 (f) (allowing off-track betting facility operators with contracts with state to "bring an action against the state" to settle any disputed claims under

---

[10] General Statutes § 4-160 (a) provides: "When the Claims Commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable."

contract); General Statutes § 52-556 (granting "right of action against the state" to recover damages for any injury to person or property caused by state employee negligently operating state owned motor vehicle). From these examples, we see that when the legislature intends to waive immunity from suit, it knows how to do so explicitly. Section 53-39a lacks similar language authorizing a suit or action against the state. The absence of such language provides further support for our conclusion that claimants under § 53-39a must file their claims with the claims commissioner.

The plaintiff claims that a waiver of immunity from suit necessarily must be implied from § 53-39a or the statute otherwise is rendered useless. We disagree. A waiver of immunity from liability is not meaningless without a concomitant waiver of immunity from suit because the claimant has recourse to file the claim with the claims commissioner. "The question whether the principles of governmental immunity from suit and liability are waived is a matter for legislative, not judicial, determination. . . . The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed by the use of express terms or by *force of a necessary implication*." (Citations omitted; emphasis added; internal quotation marks omitted.) *Duguay* v. *Hopkins*, 191 Conn. 222, 228, 464 A.2d 45 (1983). A claimant under § 53-39a can enforce his or her right to indemnity without bringing suit against the state by filing the claim with the claims commissioner. This court previously has acknowledged that we find "no authority, and we know of none, standing for the proposition that recourse to the claims commissioner is an inadequate remedy as a matter of law. We reject the implied assertion that the claims commissioner would not resolve fairly a dispute against the state." *State* v. *Lex Associates*, 248 Conn. 612, 619, 730 A.2d 38 (1999) (citing two cases in which claims com-

missioner awarded substantial amounts to claimants). A waiver of immunity from suit is not necessary in the present case to avoid rendering § 53-39a meaningless because the claimant can file the claim with the claims commissioner.

The plaintiff also claims that by concluding that § 53-39a does not waive immunity from suit, state police troopers and local police officers—both of whom may be indemnified under the statute—will be treated differently. Municipal police officers will be able to enforce their rights under § 53-39a by filing in Superior Court an action directly against the town by which they are employed, while state troopers will have to file their claims for indemnification with the claims commissioner. The plaintiff contends that allowing this difference in the enforcement of indemnification claims under § 53-39a may result in state troopers exhibiting reluctance to engage in volatile situations so as to avoid the possibility of having to defend themselves against criminal charges.

The simple answer to this claim is that such differences in treatment already exist because of inherent differences in the nature of the governmental immunity enjoyed by municipalities as contrasted with the sovereign immunity enjoyed by the state. Governmental immunity, which applies to municipalities, is different in historical origin, scope and application from the sovereign immunity enjoyed by the state. "A suit against a municipality is not a suit against a sovereign. Towns have no sovereign immunity, and are capable of suing and being sued . . . in any action. . . . Municipalities do, in certain circumstances, have a governmental immunity from liability. . . . But that is entirely different from the state's sovereign immunity from suit . . . ." (Citations omitted; internal quotation marks omitted.) *Murphy* v. *Ives*, 151 Conn. 259, 264, 196 A.2d 596 (1963). Consequently, persons with claims against

a municipality have always had different recourse from persons with claims against the state. The legislature, in enacting § 53-39a, was aware of this historical difference, but nevertheless determined not to waive immunity from suit for claims against the state under the statute.

The trial court's decision denying the defendant's motion to dismiss is reversed and the case is remanded to that court with direction to grant the motion to dismiss.

In this opinion WOLLENBERG, J., concurred, and SULLIVAN, C. J., and ZARELLA, J., concurred in the result.

ZARELLA, J., with whom SULLIVAN, C. J., joins, concurring. I agree with the majority's conclusion in this case but write separately only to reaffirm my continuing belief in the plain meaning rule as expressed in my dissenting opinion in *State* v. *Courchesne*, 262 Conn. 537, 597, 618–19, 816 A.2d 562 (2003) (*Zarella, J.*, dissenting).

NORCOTT, J., with whom BORDEN and PALMER, Js., join, dissenting. After our very recent decision in *Martinez* v. *Dept. of Public Safety*, 258 Conn. 680, 784 A.2d 347 (2001) (*Martinez I*), the majority of this court granted the state's motion for en banc reargument and reconsideration of the issues. Because I fully adhere to our opinion in *Martinez I*, concluding that General Statutes § 53-39a abrogated sovereign immunity from both liability and suit; id., 683; I cannot agree with the majority opinion set forth today. Accordingly, I respectfully dissent.

To begin, I emphasize that I fully subscribe to the analysis and conclusions of the original majority opinion of this court. "It is well established law that the state is immune from suit unless it consents to be sued

by appropriate legislation waiving sovereign immunity in certain prescribed cases. *Baker* v. *Ives*, 162 Conn. 295, 298, 294 A.2d 290 (1972); *Murphy* v. *Ives*, 151 Conn. 259, 262–63, 196 A.2d 593 (1963)." *Duguay* v. *Hopkins*, 191 Conn. 222, 227, 464 A.2d 45 (1983). "The question whether the principles of governmental immunity from suit and liability are waived is a matter of legislative, not judicial, determination. . . . The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed by the use of express terms or by force of a *necessary implication*." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 228. Thus, although § 53-39a does not *explicitly* waive sovereign immunity from suit, I conclude that the present case presents one of the "certain prescribed cases" for which the state implicitly has waived its sovereign immunity for purposes of indemnification. (Internal quotation marks omitted.) *Martinez I*, supra, 258 Conn. 683. Consequently, § 53-39a falls within the exception provided in General Statutes § 4-142 (2) for "claims upon which suit . . . is authorized by law . . . ."

Specifically, I conclude that, because the language of § 53-39a is explicit and its directive is mandatory, the legislature intended to waive sovereign immunity from both liability and suit. *Martinez I*, supra, 258 Conn. 688. If the state were not able to be sued in order to enforce § 53-39a, the plaintiff's only means of redress, pursuant to § 4-142, would be the claims commissioner. The claims commissioner, as discussed later in this opinion, has discretion to deny or accept the plaintiff's claim for indemnification if it is under $7500. See General Statutes § 4-158. Moreover, the claims commissioner may only make recommendations to the legislature to pay or deny the plaintiff's claim if it is for more than $7500. General Statutes § 4-159. This discretion in the claims commissioner, however, is at odds

with the mandatory nature of the obligation to indemnify employees who meet the statutory criteria. Id. Put differently, without the waiver of immunity from both liability and suit, the statute would be meaningless to the people whom it is intended to protect. Id.; see also *Bergner* v. *State*, 144 Conn. 282, 287, 130 A.2d 293 (1957) ("It is a cardinal rule of statutory construction that courts must presume that legislatures do not intend to enact useless legislation. . . . It would be utterly useless and meaningless to permit a suit which could not end otherwise than in a judgment for the defendant." [Citation omitted.]).

A fundamental flaw in the majority's reasoning concluding that the legislature explicitly waived its sovereign immunity from liability and not from suit is that the statute, as interpreted by the majority, now treats state police officers differently from municipal police officers. Previous decisions of this court have held, and the majority does not dispute, that municipal police officers have the right to enforce § 53-39a in court.[1] Additionally, the explicit language of § 53-39a specifically includes, in its first sentence, " 'an officer of the [d]ivision of [s]tate [p]olice' " in the class of employees entitled to indemnification from their governmental employing unit when the statutory requirements are satisfied. *Martinez I*, supra, 258 Conn. 690.

Notwithstanding the explicit language of the statute including state police officers as employees who shall

---

[1] See, e.g., *Cislo* v. *Shelton*, 240 Conn. 590, 598, 692 A.2d 1255 (1997) ("[§] 53-39a . . . authorizes indemnification for economic loss, including legal fees, incurred by officers of local police departments who are prosecuted for crimes allegedly committed by them in the course of their duties when the charges against them are dismissed or they are found not guilty" [citation omitted]); *Link* v. *Shelton*, 186 Conn. 623, 627, 443 A.2d 902 (1982) ("§ 53-39a authorizes indemnification for legal fees incurred by an officer of a local police department as a result of prosecution for a crime allegedly committed by him 'in the course of his duty' where he is found not guilty of the crime charged").

be indemnified, under the majority's approach a state police officer seeking indemnification under the same statute must overcome a series of additional procedural hurdles before being indemnified. First, the state police officer must apply to the claims commissioner for indemnification pursuant to § 4-142. Then, if the claim for which the state police officer is seeking payment is greater than $7500, such as the plaintiff's claim in the present case, the claims commissioner may only make a recommendation to the legislature to pay, or reject, the claim. General Statutes § 4-159. The legislature may then accept, alter or reject the claim for indemnification, or grant or deny the claimant permission to sue the state. General Statutes § 4-159. The state police officer would not have any redress from that legislative action.

Moreover, the majority notes that the claims commissioner may also authorize suit against the state in Superior Court pursuant to General Statutes § 4-160. Under § 4-160 (a), however, the claims commissioner must first deem suit against the state "just and equitable . . . ." Then, the claim presented to the claims commissioner must present an issue of law or fact "under which the state, were it a private person, could be liable." General Statutes § 4-160 (a). I know of no legal theory, however, which would allow an employee to seek and attain indemnification from a private employer for costs arising out of criminal charges for conduct that allegedly occurred during the course of employment. Thus, as counsel for the defendant admitted at oral argument before this court, § 4-160 can not provide relief to the plaintiff in the present case.

Thus, under the majority's analysis, state police officers who have a claim greater than $7500, but meet the other statutory criteria, will be indemnified under § 53-39a if, and only if, the legislature approves of the payment. Consequently, the majority opinion raises serious

doubts regarding the plaintiff's ability to attain any relief from the approximately $90,000 he spent defending himself against criminal charges that arose during the course of his employment as a state police officer. This scheme simply could not have been the intent of the legislature when they provided that *both* local and state police officers *"shall be indemnified* by his employing governmental unit . . . ." (Emphasis added.) General Statutes § 53-39a.

Even though this distinction is not apparent from the language of the statute, the majority contends that the disparate treatment of state and municipal police officers exists because of "inherent differences in the nature of the governmental immunity enjoyed by municipalities as contrasted with the sovereign immunity enjoyed by the state." This conclusion, however, places municipal police officers in a much better position than state police officers when, if they are prosecuted for crimes allegedly committed by them in the course of their employment, the charges are dismissed or they are found not guilty. Specifically, municipal officers have the right to seek and enforce the indemnification statute in court. Conversely, state police officers are first subject to the discretion of the claims commissioner and then to the discretion of the legislature. This distinction is neither expressed nor can it be implied from the language of the statute, nor can it be gleaned from the legislative history. Nor is there, in my opinion, any rational basis for the disparity in the treatment of state and municipal police officers, who are listed in the same indemnification statute, have the same job requirements, and confront the same risks in the course of their employment. Moreover, the scheme adopted by the majority here offers no incentive to future police officers to become members of the state police department, who are subject to the discretion of the claims commissioner and the legislature in order to be afforded

protection under § 53-39a, unlike municipal police officers, who have the right to enforce the provisions of § 53-39a in court. Thus, the disparate treatment given to state and municipal police officers as a result of the majority opinion in the present case has no rational basis either in the statute, or in our law of sovereign immunity.

Accordingly, I respectfully dissent.